**McDEVITT & STREET COMPANY, Plaintiff,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.**

**No. C–C–89–318–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

May 18, 1990.

Luther P. Cochrane, Jennifer W. Fletcher, Griffin Cochrane Marshall & Elger, Atlanta, Ga., and James E. Walker, Kennedy Covington Lobdell & Hickman, Charlotte, N.C., for plaintiff.

W. Lewis Smith, Jr. and J.B. Craighill, Craighill Rendleman Ingle and Blythe, P.A., Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

This matter is before the Court on the Defendant's Motion to Transfer, filed December 5, 1990. The Defendant is seeking a transfer to the United States District Court for the Central District of California. The Plaintiff timely has responded to the Defendant's Motion.

On May 15, 1990, this Court conducted a hearing to listen to counsel's oral arguments. Ms. Jennifer W. Fletcher of the Georgia bar, and Mr. Raymond E. Owens, Jr. of the North Carolina bar, represented the Plaintiff, McDevitt & Street Company (hereafter "McDevitt"). Mr. J.B. Craighill of the North Carolina bar and Mr. Robert C. Haase, Jr. of the California bar represented the Defendant, Fidelity and Deposit Company of Maryland (hereafter "Fidelity").

## I. FACTUAL BACKGROUND

This dispute between McDevitt and Fidelity involves Fidelity's alleged duty to pay McDevitt in excess of $3 million under construction bonds issued by Fidelity to McDevitt in reference to the construction of the Santa Monica Beach Hotel (hereafter "the Hotel"), in Santa Monica, California. McDevitt was the general contractor for the construction of the Hotel. McDevitt entered into a subcontract with Russell & Company (hereafter "Russell") to perform the heating, air conditioning, ventilation, and steam piping for the Hotel. To secure Russell's performance, Fidelity issued to McDevitt a Payment Bond and a Performance Bond, each in the amount of $2,504,600.

After completing a portion of its obligation under the subcontract, Russell essentially walked off the job site. Russell failed to complete its obligation under the subcontract and subsequently rescinded the subcontract. McDevitt subsequently hired another subcontractor, Southland Industries (hereafter "Southland"), to complete the work originally to have been performed by Russell. In subcontracting with Southland to complete Russell's performance, McDevitt allegedly has incurred additional expense in the amount of $3,911,908.21.

McDevitt has demanded that Fidelity pay it under the construction bonds the sum of $3,911,908.21. Fidelity, however, has refused McDevitt's demands. Upon Fidelity's refusal, McDevitt filed a Complaint against Fidelity in Superior Court of Mecklenburg County on July 21, 1989. McDev-

itt alleged breach of contract by Fidelity and wrongful and bad faith refusal to perform by Fidelity. On August 11, 1989, Fidelity removed McDevitt's Complaint to this Court. On December 5, 1989, Fidelity filed its Motion to Transfer. Fidelity evidently intends to defend this action by contending that Russell's nonperformance and subsequent rescission of the subcontract with McDevitt were done in good faith and were justified, which in turn excused Fidelity's refusal to pay under its construction bonds.

## II. APPLICABLE LAW

Section 1404(a) of Title 28 of the United States Code provides as follows:

(a) For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (1982). The resolution of a motion to transfer a case under section 1404(a) rests in the sound discretion of the district court. *Bates v. J.C. Penney Co.,* 624 F.Supp. 226, 227 (W.D.N.C.1985).

This Court long has recognized that in considering a motion to transfer pursuant to section 1404(a), a court ordinarily should accord the plaintiff's choice of forum great weight. *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446, 451 (W.D. N.C.1989); *Phillips v. S. Gumpert Co.,* 627 F.Supp. 725, 727 (W.D.N.C.1986); *Bates,* 624 F.Supp. at 227; *Western Steer-Mom 'N' Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 265 (W.D.N.C.1984). This Court has acknowledged also that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed." *Datasouth,* 719 F.Supp. at 451 (citations omitted). A defendant moving for a transfer of forum from a district in which venue is proper carries a particularly heavy burden. *Phillips,* 627 F.Supp. at 726–27; *Bates,* 624 F.Supp. at 227; *DMP Corp. v. Freuhauf Corp.,* 617 F.Supp. 76, 77 (W.D.N.C.1985). A court should not disturb the plaintiff's

choice of forum unless the moving party demonstrates that the balance of convenience to the parties and witnesses and the interests of justice weigh heavily in favor of the transfer to another district. *Morehead v. Barksdale*, 263 F.2d 117, 119 (4th Cir.1959); *Phillips*, 627 F.Supp. at 726–27; *Bates*, 624 F.Supp. at 227; *A.L. Williams & Assoc., Inc. v. D.R. Richardson & Assoc., Inc.*, 98 F.R.D. 748, 754 (N.D.Ga.1983). Because of the plaintiff's initial right to choose the forum, a court should refrain from transferring an action if the transfer merely would shift the inconvenience from one party to another. *See DMP Corp.*, 617 F.Supp. at 77; *Flowers Indus., Inc. v. Bakery & Confectionery Union*, 565 F.Supp. 286, 293–94 (N.D.Ga.1983); *see* 1A Pt. 2 *J. Moore, W. Taggart, A. Vestal, J. Wicker, & B. Ringle, Moore's Federal Practice* Para. .345[5] (2d ed. 1990).

█ In considering a motion to transfer, a court should consider, among other things, the plaintiff's initial choice of forum; the residence of the parties; the relative ease of access of proof; the availability of compulsory process for attendance of witnesses; the costs of obtaining attendance of willing witnesses; the possibility of a view; the enforceability of a judgment, if obtained; the relative advantages and obstacles to a fair trial; other practical problems that make a trial easy, expeditious, and inexpensive; the administrative difficulties of court congestion; the interest in having localized controversies settled at home; and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action. *See Datasouth*, 719 F.Supp. at 450; *DMP Corp.*, 617 F.Supp. at 77; *see also C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure* § 3847–3854 (1976); 1A Pt. *2 J. Moore, W. Taggart, A. Vestal, J. Wicker, & B. Ringle, Moore's Federal Practice* Para. .345[5] (2d ed. 1990). This Court has recognized that the analysis of these factors is qualitative, not merely quantitative. *See Datasouth*, 719 F.Supp. at 450 (quoting *Board of Trustees, Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Condition-*

*ing, Inc.*, 702 F.Supp. 1253, 1255–57 (E.D. Va.1988)).

## III. DISCUSSION

█ The only issue that is before the Court is whether the convenience of the parties and witnesses and the interests of justice favor the transfer of this case to the United States District Court for the Central District of California. The Court, therefore, will not discuss any of the prerequisites to a transfer pursuant to section 1404(a). *See Datasouth*, 719 F.Supp. at 450 (recognizing that venue must be proper in transferor forum and that transferee forum must be a district in which action could have been brought).

## A. CONTENTIONS OF THE PARTIES

Fidelity contends that McDevitt's action is a California action that could have, and should have, been brought in California. Fidelity argues that this action has no connection with any activity occurring in North Carolina and that almost every aspect of this case favors the adjudication of this dispute in California. Additionally, Fidelity argues that McDevitt brought this action in North Carolina only because McDevitt's home office is in Charlotte, North Carolina.

McDevitt, on the other hand, argues that the Court should deny Fidelity's Motion to Transfer for essentially two reasons. McDevitt argues, first, that because Fidelity never presented the concept of transfer after filing its Notice of Removal on August 11, 1989, after filing its Answer on September 13, 1989, or in response to the Court's Pretrial Order, but waited until three weeks before the Court's initial discovery deadline, the Court should deny the Motion. McDevitt argues, second, that several factors tip the balance of convenience and the interests of justice in McDevitt's favor.

## B. THE COURT'S ANALYSIS

### 1. The Timeliness of Fidelity's Motion to Transfer

█ The Court believes that the claimed untimeliness of the Motion to

Transfer should not preclude the Court's consideration of the Motion. First, section 1404(a) does not require a party to make a motion to transfer within a specified period of time after the filing of the cause of action. *See* 28 U.S.C. § 1404(a) (1982). Further, it appears that because Fidelity actively was not involved in the construction of the Hotel, it must rely on other entities and persons to obtain information and documents. It appears, furthermore, that Fidelity's counsel actively has investigated the underlying facts to this dispute. The Court concludes, consequently, that counsel has not been dilatory in defending this action. For these reasons, the Court believes that McDevitt's contention regarding the claimed untimeliness of the Motion to Transfer is without merit.

*2. The Interests of Justice and the Convenience of the Parties and Witnesses*

By rejecting McDevitt's contention regarding the untimeliness of Fidelity's Motion to Transfer, the Court now must consider the merits of the Motion. The Court, therefore, will consider each of the twelve factors previously identified as relevant to the disposition of Fidelity's Motion to Transfer.

The Court finds that McDevitt's initial choice of forum clearly favors the position of McDevitt and the adjudication of this dispute in North Carolina. The Court believes that any further explanation of this first factor really is unnecessary.

The Court finds that the residence of the parties slightly favors the position of McDevitt and the adjudication of this dispute in North Carolina. McDevitt is a Florida corporation. McDevitt's principal place of business appears to be Charlotte, North Carolina, and McDevitt has its main corporate office in Charlotte, at which McDevitt maintains its corporate records and now maintains the records from the construction of the Hotel. Fidelity, on the other

hand, is a Maryland corporation with its principal place of business in Baltimore, Maryland. According to the Charlotte telephone directory for September 1989–90, however, Fidelity maintains an office and a telephone listing in Charlotte.

Third, the Court finds that the relative ease of access of proof favors slightly the position of Fidelity and the adjudication of this dispute in California. Fidelity has maintained all, or mostly all, of the records relevant to this case in California. After completing construction at the Hotel, McDevitt, on the other hand, closed its office at the Hotel's construction site and transferred all of the relevant records pertaining to the Hotel's construction to its office in Charlotte. Regardless of the forum for this trial, one of the parties will suffer inconvenience in transporting the documents to a distant forum. The fact that documents and other records, which may be necessary for a fair determination of the issues in this lawsuit, are within the subpoena power of the California court, but outside the subpoena power of this Court tips the balance in Fidelity's favor. These documents and records belong to Russell and Southland and are located in their respective California offices. For this reason, the relative ease of access of proof slightly favors Fidelity's position and the adjudication of this dispute in California.

Fourth, the Court finds that the availability of compulsory process for attendance of witnesses clearly favors Fidelity's position and the adjudication of this dispute in California. Fidelity's California counsel, as an officer of the court, has informed this Court that he intends to call at least twenty, if not thirty, witnesses who are employees, or former employees, of Russell, McDevitt, and other entities involved in the Hotel's construction and who do not reside within the subpoena power of this Court, but do reside within the subpoena power of the California court.[1] These witnesses are

---

**1.** McDevitt argues that in considering the compulsory attendance of witnesses (and also the convenience of the witnesses), the Court should focus on the threshold and key issue in this dispute—whether under California law, Russell had the right to rescind its subcontract with McDevitt. McDevitt contends that the resolution of this issue is for the Court and that the Court's resolution may make Fidelity's contention regarding the necessity of calling several California witnesses who are not subject to the subpoena power of this Court immaterial. The

not within Fidelity's control. Although these witnesses may agree to attend the trial in Charlotte, the only way that Fidelity can assure their attendance is by the issuance of subpoenas on the witnesses as individuals. These witnesses are not employees of the parties to this action whose attendance can be compelled in other ways, such as McDevitt's witnesses who apparently are employees of McDevitt.

Fifth, the Court finds that the costs of obtaining the attendance of willing witnesses slightly favors the position of Fidelity and the adjudication of this dispute in California. Both Fidelity and McDevitt evidently are large corporations with substantial financial resources capable of incurring the expense of transporting willing witnesses to attend this trial, regardless of its forum. If this case is tried in California, McDevitt will have to transport to California and house three witnesses who reside in Charlotte. If the trial remains in North Carolina, according to McDevitt, Southland representatives have agreed voluntarily to attend the trial in Charlotte and McDevitt has agreed to bear the expense of the attendance of Southland's representatives. If the trial remains in North Carolina and Fidelity successfully can persuade its many witnesses to attend trial voluntarily, without compulsion through a subpoena, Fidelity will incur substantially higher costs to transport and house all of its witnesses in Charlotte than McDevitt will incur if it transports to California and houses its three witnesses from its Charlotte office. For these reasons, the Court believes that the costs of obtaining the attendance of willing witnesses slightly favors the position of Fidelity.

Sixth, the Court finds that the possibility or necessity of a jury view is not a factor impacting the Court's decision. As McDevitt notes, the work performed by Russell was all interior work in the sense that the work is heating and air conditioning duct work contained inside the walls of the Hotel. Since the Hotel's construction has been completed, a view does not seem like

it would assist the jurors in their determination of this dispute. Further, the parties have failed to show any disadvantage or impracticality to the use of photographs to illustrate testimony about the Hotel.

Seventh, the Court finds that the enforceability of a judgment, if obtained, fails to impact the Court's decision in any significant manner. McDevitt has failed to argue that at this time, it would have a more or less difficult time enforcing a judgment in either jurisdiction.

Eighth, the Court finds that the relative advantages and obstacles to a fair trial favors the position of Fidelity and the adjudication of this dispute in California. If this case is tried in North Carolina, it is likely that Fidelity will have to use deposition testimony as a substitute for live testimony because of Fidelity's inability to compel the attendance of several witnesses. The Court believes, therefore, that because of a jury's difficulty in judging the credibility of witnesses from deposition transcripts, the use of deposition testimony at trial effectively might prevent Fidelity from receiving a fair trial.

Ninth, the Court finds that another practical problem—judicial economy—might favor Fidelity's position and the adjudication of this dispute in California. *See Datasouth,* 719 F.Supp. at 452–53 (recognizing judicial economy and conservation of judicial resources as proper factor to consider in ruling on motion to transfer). It appears that on April 20, 1990, Russell filed suit in the United States District Court for the Central District of California against McDevitt for restitution for the value of work performed for and at the request of McDevitt. It appears, further, that the issues involved in Russell's case are substantially identical to the issues that Fidelity intends to raise in the case before this Court—that is, McDevitt's alleged prevention of Russell from performing the subcontract. This Court believes that if this case is transferred to California, it might be appropriate for McDevitt's case to be consolidated under Rule 42 of the Federal

parties, however, have failed to brief all issues except for the Motion to Transfer. This Court,

therefore, finds it virtually impossible at this time to consider this averred key issue.

Rules of Civil Procedure with Russell's lawsuit against McDevitt. *See* F.R.Civ.P. 42(a) (authorizing consolidation of actions involving common questions of law or fact). Consolidation, if appropriate, would certainly conserve judicial resources and promote the efficient administration of justice.

Tenth, the Court finds that the administrative difficulties of court congestion does not significantly impact the Court's decision. The Court has discovered some relevant statistics pertaining to court congestion in the Central District of California and the Western District of North Carolina.

| OVERALL WORKLOAD STATISTICS | W.D.N.C. | C.D. Cal. |
|---|---|---|
| Filings | 1,372 | 11,091 |
| Terminations | 1,462 | 10,772 |
| Pending | 928 | 11,422 |
| **ACTIONS PER JUDGESHIP** | | |
| Number of Judgeships | 3 | 22 |
| Filings of Civil Cases | 330 | 462 |
| Pending Cases | 309 | 519 |
| **MEDIAN TIMES--CIVIL (in months)** | | |
| From Filing to Disposition | 9 | 7 |
| From Issue to Trial | 12 | 12 |
| **CIVIL CASES OVER THREE YEARS OLD** | | |
| Number of Cases | 18 | 574 |
| Percentage of Cases | 2.4 % | 5.9 % |

Administrative Office of the United States Courts, *Federal Court Management Statistics, 1989* 68, 129. If this Court denies the Motion to Transfer and this case remains in North Carolina, the Clerk likely will place this case on a published trial calendar within the next five months, probably November 1990 at the earliest. Based upon the above statistics, it appears that if transferred to California, this case will appear for trial in about seven months, which would be in December 1990. If this case is transferred and subsequently consolidated with Russell's action against McDevitt, however, it is possible that the trial would take place sometime in November, 1990, which would be seven months from the filing of Russell's lawsuit. The Court is of the opinion, therefore, that regardless of the forum for this trial, the trial will not take place until approximately November or December 1990. The Court concludes, accordingly, that the congestion of the

court system effectively does not favor the position of either McDevitt or Fidelity.

Eleventh, the Court finds that the interest in having localized controversies settled at home strongly favors the adjudication of this dispute in California. Because McDevitt's principal place of business is Charlotte, this District has an interest in the issues in, and outcome of, this action. The Court concludes that despite the existence of McDevitt's main corporate office in Charlotte, this dispute is essentially a California controversy. Several factors lead the Court to this conclusion. The Hotel is located in California. McDevitt executed a contract for Russell's services through its California office. Through its California office, Fidelity issued the bonds to McDevitt at McDevitt's California office. Russell's performance of its original subcontract with McDevitt should have occurred in California. Fidelity's performance of its obligation under the construction bonds, if

necessary, apparently will occur at the California office that originally issued the bonds.

And twelfth, the Court finds that the propriety in having the trial in a forum that is at home with the governing state law really does not impact this Court's decision. The parties essentially concede that California law will govern this action. Although it arguably would be beneficial to have California courts apply California law in this diversity case, Fidelity has failed to demonstrate to this Court any reason that this Court could not apply correctly California law to the issues in this case. Fidelity, moreover, has failed to argue to this Court that California law in the relevant areas is so unsettled that a California court should resolve the relevant issues.

The Court now has considered individually each of the relevant factors. To more effectively summarize its findings, the Court will group the factors into three categories: Those factors that do not favor the position of either party, those factors that favor Fidelity's position (and, thus, the adjudication in California), and those factors that favor McDevitt's position (and, thus, the adjudication in North Carolina).

Four factors essentially failed to impact the Court's decision and, therefore, effectively do not tip the balance in favor of either party. Those factors are the possibility of a jury view; the enforceability of a judgment, if obtained; the administrative difficulties of court congestion; and the propriety in having the trial in a forum that is at home with the governing state law.

Six factors favored Fidelity's position and the adjudication of this dispute in California. Those factors are the relative ease of access of proof, the availability of compulsory process for attendance of witnesses, the costs of obtaining attendance of willing witnesses, the relative advantages and obstacles to a fair trial, judicial economy, and the interest in having localized controversies settled at home.

Two factors favored the position of McDevitt and the adjudication of this dispute in North Carolina. Those factors are McDevitt's initial choice of forum and the residence of the parties.

The Court has engaged in a careful scrutiny of all of the relevant factors and analyzed the relevant factors on a qualitative basis, rather than on mere quantitative basis. *See Datasouth*, 719 F.Supp. at 450. The Court finds that Fidelity has satisfied its burden of showing that a transfer is necessary in the interests of justice. The Court finds, further, that a transfer will not merely shift the inconvenience from one party to another. This dispute is clearly a California dispute that has a substantial connection with activities occurring in California. This action has no connection with any activity occurring in North Carolina. It appears that numerous witnesses who are not within the subpoena power of this Court, but within the subpoena power of the California court, may be essential to the fair determination of this dispute. After reviewing all of the relevant factors, the Court concludes that in the interests of justice and for the convenience of the parties, this case should be tried in California. The Court, therefore, will grant Fidelity's Motion to Transfer and will transfer this case to the United States District Court for the Central District of California.

## IV. MISCELLANEOUS DISCUSSION

On April 24, 1990, this Court extended the discovery deadline to May 15, 1990, the date of the hearing. Under the terms of the April 24, 1990 Order, the Court left unresolved whether Fidelity's timely request for a further extension would be granted. Because of this Court's disposition of the Motion to Transfer, the Court will leave the resolution of Fidelity's request for further discovery to the transferee court.

## V. ORDER OF THE COURT

Now, Therefore, It Is Ordered that (1) Fidelity's Motion to Transfer be, and hereby is, GRANTED; (2) this case ·be, and hereby is, TRANSFERRED to the United States District Court for the Central District of California; (3) Fidelity's request for further discovery shall remain pending for

resolution by the United States District Court for the Central District of California; and (4) the Clerk transfer the case file to the Clerk for the United States District Court for the Central District of California for further proceedings in that court.