**JIM CROCKETT PROMOTIONS, INC., Plaintiff,**

v.

**ACTION MEDIA GROUP, INC., Rick Pack and Sillerman–McGee Communications Management Corp., Defendants.**

No. C–C–90–0220–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 19, 1990.

**94**

Dennis L. Guthrie, Robert K. Trobich, Murchison Guthrie Davis & Henderson, Charlotte, N.C., for plaintiff.

David N. Allen, Parker Poe Adams & Bernstein, Charlotte, N.C., Frank A. Hirsch, Jr., Gerald E. Singleton, Frankfurt Garbus Klein & Selz, P.C., New York City, for defendants.

### ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendants' joint motion, filed July 30, 1990, to dismiss this matter for lack of personal jurisdiction as to all Defendants and for failure of Plaintiff to state a claim on which relief can be granted as to Defendant Sillerman–McGee Communications Management Corp. (hereinafter "SMCM"). In the alternative, Defendants request that this Court transfer this matter to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). A brief in support of Defendants' positions was submitted with the motion on July 30, 1990.

### I. PROCEDURAL AND FACTUAL BACKGROUND.

Plaintiff is a North Carolina corporation with its principal place of business in Mecklenburg County, North Carolina. Defendant Action Media Group, Inc. (hereinafter "AMG") and SMCM are New York corporations with their principal places of business in New York, New York. Defendant Rick Pack (hereinafter "Pack") is a California resident.

On May 25, 1990, Plaintiff filed a complaint in this matter in the General Court of Justice, Superior Court Division, Mecklenburg County, North Carolina. A copy of the summons and complaint was served on SMCM on June 11, 1990 and on AMG and Pack on June 18, 1990. On July 11, 1990, Defendants filed a joint petition for removal from the state court to the United States District Court in the Western District of North Carolina. This matter was originally assigned to the Honorable James B. McMillan.

On August 29, 1990, Plaintiff filed a response to Defendants' motions and a brief in support of the response. Thereafter, this matter was reassigned to the undersigned on October 11, 1990.

The dispute in this matter appears to revolve around a contract entered into between Plaintiff and Pack (on behalf of AMG's predecessor in interest, Time Sales International, Ltd.) on April 8, 1987 on a plane from Dallas, Texas to Charlotte, North Carolina. Although it is not clear, it appears from the affidavits of James A. Crockett, Jr. and Pack that the contract was signed while in North Carolina air space. In the contract, Time Sales was granted the exclusive right to sell television barter advertising time for wrestling shows produced by Plaintiff. Pack is the president of AMG, and SMCM is a former shareholder of AMG. Shortly thereafter, AMG purchased Time Sales. SMCM provided AMG with accounting services during the relevant time period of the dispute.

In its complaint, Plaintiff alleges that from the time period beginning in October, 1988 through April, 1989, AMG invoiced sixteen (16) advertising agencies. Fourteen (14) of those agencies are located in New York. The remaining two agencies are located in states other than North Carolina. According to Plaintiff, AMG was paid $881,898.45 on the invoices—the total amount owed by the agencies. However, Plaintiff claims that a balance of $314,-505.45 is owed to it from AMG and Pack. The gist of the relief sought by Plaintiff is an accounting from Defendants regarding the amount in dispute.

The affidavits submitted by the parties indicate that the contract for the most part was executed outside the state of North Carolina. Pack claims that all meetings

between the parties concerning AMG's performance under the contract took place in New York and Dallas. *See Affidavit of Rick Pack,* filed July 30, 1990, at par. 9 on page 4 and par. 18 on page 6 (hereinafter "Pack Aff."). Moreover, Pack states, "[N]othing of any significance in relation to the negotiation and execution of the contract occurred in North Carolina and there was no intention on anyone's part to invoke the benefits and protections of North Carolina law". *Id.* at par. 15 on page 6. In fact, the contract is silent as to choice of law. Pack claims that he visited Charlotte on only one occasion for one day. *Id.* at par. 25 on page 8.

Plaintiff contends that Pack visited North Carolina on several occasions. *See Affidavit of David E. Johnson,* filed August 29, 1990, at par. 7 on page 2 (hereinafter "Johnson Aff."). Plaintiff claims that Defendants' most significant contact with North Carolina is the $4,021,611.17 in funds that Defendants caused to be sent to Plaintiff or First Charlotte Bank in Charlotte pursuant to contractual terms. *Id.* at par. 4 on page 1. Moreover, Defendants caused to be sent various letters, facsimile transmissions and telephone conversations to Plaintiff in North Carolina. *Id.* at par. 5 on page 2.

## II. LEGAL CONCLUSIONS.

Based on the information presented to the Court and the arguments contained in the briefs submitted by Plaintiff and Defendants, the Court concludes that venue does not lie in this Court. Accordingly, the Court will order that this matter be transferred to the Southern District of New York. Because the Court believes that this Court does not have venue in this matter, the Court will only address that motion and not Defendants' motion to dismiss. A discussion of the Court's conclusions follows.

### A. *Legal Standard for Motions to Transfer.*

Title 28, United States Code, Section 1404(a) is applicable to motions involving change of venue. That statute provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might be brought.

It is well established that the moving party carries the burden of establishing that a case should be transferred. *See generally* 1A *Moore's Federal Practice,* Par. 0.345[5] at 4360 (Matthew Bender 1990) (hereinafter "Moore's"). This Court has consistently found that the burden is a heavy one.[1] The decision to transfer is left to the sound discretion of the trial court. *Moore's* at 4362; *see also In re Ralston Purina Co.,* 726 F.2d 1002, 1005 (4th Cir.1984); *Bates,* 624 F.Supp. at 227 (citing *Akers v. Norfolk & Western Railway Co.,* 378 F.2d 78, 80 (4th Cir.1967)).

In determining whether to transfer a case, the plain language of the statute requires that the Court balance the convenience to the parties and witnesses, as well as the interests of justice. Because the movant assumes a heavy burden when making a motion to transfer, the motion will not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered. *See Phillips,* 627 F.Supp. at 727. Moreover, the Court has long held that a court ordinarily should accord the plaintiff's choice of forum great weight. *See Commercial Equipment Co.,* 738 F.Supp. at 976 (providing extensive authority); *McDevitt & Street Co.,* 737 F.Supp. at 353 (same). "[A] plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice

---

1. *See Commercial Equipment Co. v. Barclay Furniture Co.,* 738 F.Supp. 974, 977 (W.D.N.C.1990); *McDevitt & Street Co. v. Fidelity and Deposit Co.,* 737 F.Supp. 351, 353 (W.D.N.C.1990); *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.,* 719 F.Supp. 446, 451 (W.D.N.C.1989); *Phillips v. S. Gumpert Co. Inc.,* 627 F.Supp. 725, 726–27 (W.D.N.C.1986); *Bates v. J.C. Penney Co.,* 624 F.Supp. 226, 227 (W.D.N.C.1985); *DMP Corp. v. Fruehauf Corp.,* 617 F.Supp. 76, 77 (W.D.N.C.1985); *Western Steer—Mom 'N' Pops, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 265 (W.D.N.C.1984).

... should not be lightly disturbed". *Datasouth*, 719 F.Supp. at 451 (citations omitted).

The district court should consider the following factors when deciding if a matter will be transferred:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;
6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

*See Commercial Equipment Co.*, 738 F.Supp. at 977; *McDevitt & Street Co.*, 737 F.Supp. at 354. The analysis of these factors is qualitative, not merely quantitative. *Id.*

B. *Analysis of the Factors.*

■ In conducting the balancing test required in deciding whether to transfer a matter, the Court has considered the factors cited above. A discussion of each factor in the order previously cited follows.

1. Plaintiff's initial choice of forum.

The Court believes that this factor weighs in favor of the matter not being transferred. While this factor carries considerable weight, it must be balanced with the other factors. *See Commercial Equipment*, 738 F.Supp. at 977; *but see McDevitt & Street*, 737 F.Supp. at 355–59 (although this Court found that plaintiff's choice of forum favored its position, Court nonetheless granted defendants' motion to transfer after *all* factors had been considered).

2. Residence of the parties.

The Court believes that this factor favors the position of Defendants. Two (2) of the three (3) Defendants are New York corporations. While Pack does reside in California, as president of AMG it is likely that he travels to New York on a consistent basis. The Court does recognize that Plaintiff is a North Carolina corporation. Nonetheless, two of the Defendants are located in New York, and the records of those corporations are also in New York. *See Pack Aff.* at par. 6 on page 3.

3. Relative ease of access of proof.

The Court believes that this factor weighs heavy in transferring this matter to the Southern District of New York. Plaintiff has alleged that an accounting is necessary to determine how much is owed to it. Because fourteen (14) of the sixteen (16) advertising agencies are located in New York, the Court believes that the documents pertaining to those sales of advertising space of Plaintiff's programs are in New York. Plaintiff, in its brief, recognized the importance of those documents to this case. Plaintiff states that, "... SMCM controlled the critical documents during the time in question ..." *See Plaintiff's Brief*, filed August 29, 1990 at 11. It is undisputed that those documents are in New York.

The Court further believes that the industry practice in collecting advertising revenues will be relevant in this litigation.

What (Plaintiff) fails to appreciate is that advertising time is initially contracted for and sold at a price which is based on a projected ratings and audience share, measured by Nielson ratings, which is subject to adjustment based on actual performance. The key witnesses and documents pertaining to this central aspect to this action are all located in New York.

*Pack Aff.* at par. 30 on page 10. Therefore, the Court believes that this factor favors transferring this matter.

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.

The Court believes that this factor clearly favors Defendants' arguments to transfer this matter. As already noted, many of the witnesses from the advertising agencies are located in New York. Because these persons are not parties to this action and New York is more than 100 miles from this District, the Court does not have subpoena power to compel those witnesses' attendance at trial. *See Rule 45(e)(1) of the Federal Rules of Civil Procedure.* Accordingly, the testimony of those witnesses may be unavailable if this matter is not transferred.

Moreover, the Court believes that the expense to the parties in obtaining the attendance of willing witnesses will be reduced if this matter is transferred. In addition to New York advertising agency witnesses, Defendants would have to incur the expense of witnesses from their offices being transported and housed in Charlotte during a trial of this matter. While it is true that Plaintiff will have to now incur that expense, it is equally true that Plaintiff would have to incur some similar transportation expenses if this matter was tried in Charlotte. As Defendants note, the main agents of Plaintiff involved in this matter do not reside in North Carolina. *See Pack Aff.* at par. 31 on page 10. Accordingly, the Court believes that this factor is in Defendants' favor.

5. The possibility of a view.

The Court is unaware that a view by the jury will be necessary in this case. Accordingly, this factor favors neither party.

6. The enforceability of a judgment.

The Court believes that this factor slightly favors Defendants. Defendants do not own any property in North Carolina. Therefore, the Courts of California and New York would be required to enforce any judgment Plaintiff obtains. However, Plaintiff has not stated that it believes a judgment will be difficult to enforce. Accordingly, the Court puts some but only a little weight on this factor.

7. The advantages and obstacles to a fair trial.

The Court believes that this factor favors Defendants' position that the matter should be transferred. If this matter was tried in North Carolina, it is possible that the attendance of New York advertising agency witnesses could not be obtained. Their testimony would have to be presented to a jury through deposition testimony. The Court believes a jury would be better able to weigh the credibility of those witnesses through live testimony. *See McDevitt & Street,* 737 F.Supp. at 357. Accordingly, the Court believes that this factor favors Defendants.

8. Other practical problems that make a trial easy, expeditious, and inexpensive.

As previously noted above, the Court believes that a trial in New York would require less total expense. Accordingly, the Court believes that this factor weighs in favor of the matter being transferred.

9. Court congestion.

The Court believes that the Western District of North Carolina and the Southern District of New York are relatively comparable in the number of cases being handled and disposed of on a per judge basis. The civil case load of the Southern District of New York and the Western District of North Carolina are compared in the chart below.

U.S. DISTRICT COURT—
JUDICIAL WORKLOAD PROFILE (1987)

|  | W.D.N.C. | S.D.N.Y. |
|---|---|---|
| Civil filings/Judge | 364 | 362 |
| Pending cases/Judge | 298 | 454 |
| Completed trials/Judge | 67 | 28 |
| Median time (months) from filing to disposition | 6 | 8 |
| Median time (months) from issue to trial | 10 | 17 |

*See* Administrative Office of the United States Courts, *Federal Court Manage-*

*ment Statistics, 1987* at 48 and 68. Accordingly, the Court does not believe this factor weighs in favor of either party.

10. The interest of having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action.

Plaintiff contends that North Carolina law is applicable to this action because the contract was signed in North Carolina air space. However, the Court believes an equally compelling argument can be made that New York law could apply to this matter since a great deal of the contract was executed in New York. In any event, the Court has not been presented with briefs and arguments by the parties to enable it to determine which state's law is applicable to this matter. Accordingly, the Court does not believe that it is appropriate to decide such an issue without the parties briefing the issue in full. Furthermore, the Court believes that this matter appears to be a relatively simple contract dispute and that a court from either New York or North Carolina would have little difficulty in applying the applicable law. Therefore, the Court does not believe that this factor favors either side.

11. The avoidance of unnecessary problems with conflict of law.

As previously noted, the Court at this time is not willing to decide the choice of law issue. Therefore, the Court is unaware of any potential conflict of law issues. Nonetheless, the parties have not brought such issues to the Court's attention. Thus, the Court concludes that this issue favors neither party.

C. *Conclusion from the Analysis of Factors.*

Although the Court is more concerned with the qualitative nature of the factors rather than the quantitative nature of the factors, the Court believes that the factors fall into three categories—factors that favor neither party (factor numbers 5, 9, 10, and 11); factors that are favorable to Defendants (factor numbers 2, 3, 4, 6, 7 and 8); and factors that are favorable to Plaintiff (factor number 1).

The Court believes that the balancing of factors demonstrates that four factors essentially failed significantly to impact the Court's decision. Therefore, these factors do not tip the balance in favor of either party. *See Commercial Equipment Co.,* 738 F.Supp. at 980. One factor favors Plaintiff and six factors favor Defendants.

After a careful examination of these factors, the Court concludes that it would be more convenient to try this matter in Southern District of New York than in this District. Moreover, the Court believes that the interests of justice would be better served if this matter proceeded in a forum where a large portion of the contract was executed. Because numerous documents and witnesses essential to this case are located in New York, the Court finds that Defendants have carried their burden of persuasion in showing that the Southern District of New York is a more convenient forum to proceed with this matter.

D. *Venue in the Southern District of New York.*

■ In response to Defendants' motion to transfer this matter to the Southern District of New York, Plaintiff contends that venue would be improper in that District. Title 28, United States Code § 1391(a) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

As Plaintiff correctly states, Defendant Pack resides in California. Therefore, not all of the Defendants reside in New York. Of course, Plaintiff does not reside in New York. Therefore, venue is proper in the

Southern District of New York only if the claim arose in that District.

The burden is upon the plaintiff to show that each claim arose in this district. *See Wilson v. Wilson–Cook Medical, Inc.*, 720 F.Supp. 533, 539 (M.D.N.C.1989). Plaintiff contends that the claim in this matter arose where the damages occurred; namely in North Carolina where Plaintiff "felt" the damages. However, the statute does not provide a definition for the term "claim arose".

The Fourth Circuit has directed that courts in this District utilize a "weight of the contacts" test in determining where the claim arose for purposes of § 1391(a). *See Broadcasting Co. v. Flair Broadcasting*, 892 F.2d 372, 377 (4th Cir.1989) ("[W]e believe that the 'weight of the contacts' test is the most appropriate means for determining venue under 28 U.S.C. § 1391(a)"). Under the test, venue is proper in the district having the most significant ties to the claim. *Id.* at 376. The test achieves the goal of protecting "the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial" by weighing all factors relevant to venue. *Id.* at 377 (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979).

In a case where most of the meetings, discussion and negotiations between the parties occurred outside of South Carolina, the Fourth Circuit upheld the district court decision to transfer the case. *Flair Broadcasting*, 892 F.2d at 374 & 377. "[A]pplying the 'weight of the contacts' test to the present case, it is apparent that most of the significant events, witnesses, and records relating to the dispute either occurred or are located outside the District of South Carolina". *Id.* at 377; *see also Wilson*, 720 F.Supp. at 540.

In this case, the Court believes that New York is the jurisdiction having the most significant ties to this litigation. As was previously noted, the majority of meetings concerning this contract occurred in New York. Moreover, Plaintiff's agents regularly traveled to New York to discuss areas covered by the contract. *See Pack's Aff.*, at par. 13, 17, 18, 21 and 22 on pages 5, 6, 7 and 8. The Court also believes that many of the witnesses and documents pertinent to this lawsuit are located in New York. Therefore, the Court believes that New York has the most significant ties to this matter and that venue is proper in the Southern District of New York.

## III. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that:

(1) Defendants' motion in the alternative to transfer this matter to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) be, and hereby is, GRANTED;

(2) This matter is hereby TRANSFERRED;

(3) The Clerk is hereby directed to cause the case file to be transferred to the Clerk for the United States District Court for the Southern District of New York; and

(4) Defendants' motion to dismiss this matter for lack of personal jurisdiction as to all Defendants and for failure of Plaintiff to state a claim on which relief can be granted as to Defendant Sillerman–McGee Communications Management Corp. is MOOT in light of the Court's Order transferring this matter to the Southern District of New York.