**NUTRITION & FITNESS, INC., Plaintiff,**

v.

**BLUE STUFF, INC., Defendant.**

**No. 3:02–CV–237–MU.**

United States District Court, W.D. North Carolina, Charlotte Division.

May 19, 2003.

Charles A. Burke, David H. Read, Womble, Carlyle, Sandridge, and Rice, Winston-Salem, NC, for Plaintiff.

Daniel L. Tedrick, Hunton &Williams, Carlotte, NC, Robert B. Cordle, Mayer, Brown, Rowe & Maw, Charlotte, NC, James C. McMillan, Clifford C. Dougherty, III, Michael D. McClintock, McAfee & Taft, Oklahoma, City, OK, for Defendant.

## ORDER

MULLEN, Chief Judge.

THIS MATTER is before the Court upon the Defendant's Motion to Dismiss and alternative Motion to Transfer Venue. Because the parties failed to adequately brief the transfer issue, the Court ordered

further briefing of the factors weighing for and against transfer of this case to Oklahoma. The supplemental briefs have been filed, and the Court is now prepared to rule on the motions.

## I.  FACTS AND PROCEDURAL HISTORY

Defendant Blue Stuff, Inc. has manufactured and sold the health product "Blue Stuff" and "Super Blue Stuff" since February 1, 1996, and claims to have trademarks and trade dress rights as to both products. On April 19, 2002, Plaintiff Nutrition and Fitness, Inc. ("NFI") filed three intent-to-use trademark applications with the United States Patent and trademark office as to three products that it intended to begin producing: "Super Blue–Emu," "Blue–Emu," and "Pain Solutions Super Strength Blue–Emu." On or about May 3, 2002, NFI began marketing and selling its "Blue–Emu" products in interstate commerce. Alleging false advertising, NFI filed suit against Blue Stuff, Inc. in this Court on June 12, 2002 ("the North Carolina action"), but did not at that time serve the summons and complaint on Defendant.

Without knowledge of the North Carolina action, Defendant Blue Stuff, Inc. filed a lawsuit against NFI in the United States District Court for the Western District of Oklahoma on September 19, 2002 ("the Oklahoma action"). The Oklahoma action alleged federal trademark infringement and false advertising pursuant to the Lanham Act, as well as state law trademark causes of action. Defendant served NFI with a summons and complaint on September 24, 2002. On September 25, 2002, more than three months after it had filed the North Carolina action, NFI finally served Defendant Blue Stuff, Inc. with a summons and complaint. Subsequent to serving Defendant, on October 2, 2002,

NFI filed an amended complaint that put forward federal and state law trademark causes of action.

The instant dispute arises out of the above-described chain of events. Blue Stuff, Inc. filed its Motion to Dismiss with this Court based primarily on the ground that NFI's lawsuit constitutes an improper "hip pocket" filing that should be disregarded for purposes of the first-filed rule. It argues that this Court should dismiss the instant action, or in the alternative transfer it to United States District Court for the Western District of Oklahoma, where it filed its action. In opposition, NFI relies on the first-filed rule for the proposition that the lawsuit filed with this Court has priority over the Oklahoma action, and that Defendant's Motion to Dismiss must be denied. It further contends that transfer is inappropriate, primarily because its choice of forum, the Western District of North Carolina, is entitled to great deference.

■ In the Oklahoma District Court, NFI filed a motion to stay the Oklahoma action in favor of the North Carolina action. Judge Alley granted that motion in part, ruling that the Oklahoma action was stayed pending the decision of this Court on the question of venue, properly noting that where parallel federal litigation has been filed, the court in which the litigation was first filed must decide the question of where the case should be heard.

## II.  THE ISSUES BEFORE THE COURT

Defendant Blue Stuff, Inc. seeks to have this Court either dismiss the instant lawsuit or transfer the matter to Oklahoma, based on the anticipatory filing exception to the first-filed rule. The Court concludes that Blue Stuff's argument regarding the application of the anticipatory filing exception to the first-filed rule is

correct; however, the Court ultimately concludes that transfer to Oklahoma, rather than dismissal, is proper as to the instant suit. The Court shall address the anticipatory filing and transfer issues in turn.

### A. The First–Filed Issue

■■■ Where the same parties have filed similar litigation in separate federal fora, doctrines of federal comity dictate that the matter should proceed in the court where the action was first filed, and that the later-filed action should be stayed, transferred, or enjoined. *Guthy–Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.,* 179 F.R.D. 264, 269 (C.D.Cal.1998); *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131–32 (S.D.N.Y.1994); *Hop–In Food Stores, Inc. v. S & D Coffee, Inc.,* 642 F.Supp. 1106, 1107 (W.D.Va.1986); *Columbia Plaza Corp. v. Security Nat'l Bank,* 525 F.2d 620, 626 (D.C.Cir.1975) (stating, "[s]ound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided"). The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis. *Plating Resources, Inc. v. UTI Corp.,* 47 F.Supp.2d 899, 903 (N.D.Ohio 1999); *Guthy–Renker Fitness, L.L.C.,* 179 F.R.D. at 270.

■■■ The determination of whether to apply the first-filed rule is not entirely ungoverned, however; courts have recognized three factors to be considered in determining whether to apply the first-filed rule: 1) the chronology of the filings, 2) the similarity of the parties involved, and 3) the similarity of the issues at stake. *E.g., Plating Resources,* 47 F.Supp.2d at 903. Furthermore, even if a court finds the first-filed rule applicable, it may still make the discretionary determination that

the rule should be ignored as a result of "special circumstances," such as forum shopping, anticipatory filing, or bad faith filing. *Id.* at 905; *800–Flowers,* 860 F.Supp. at 132; *Hop–In Food Stores,* 642 F.Supp. at 1107. If a court determines that the suit first filed with it should be disregarded in favor of the later-filed suit, the court may stay its proceedings, dismiss the case entirely, or transfer the case to its sister court. *Big Baby Co. v. Schecter,* 812 F.Supp. 442, 443 (S.D.N.Y.1993).

Blue Stuff, Inc.'s Motion to Dismiss essentially acknowledges the applicability of the first-filed rule to the instant matter. Rather than attacking the applicability of the first-filed rule, Blue Stuff, Inc. relies on the forum shopping or anticipatory filing exception to the first-filed rule. The basic argument espoused by Blue Stuff, Inc. is that NFI impermissibly and unfairly attempted to manipulate the forum of this lawsuit by filing the instant action, waiting until Blue Stuff Inc. learned of the potentially infringing products and filed suit, then serving the North Carolina action on Blue Stuff, Inc. the day after NFI was served with the Oklahoma action. Blue Stuff, Inc., as well as several courts, refers to this course of action as maintaining a "hip pocket" filing that may be pulled out in case a dispute subsequently results in litigation. Blue Stuff, Inc. also argues that the heart of the dispute between the two parties was not even addressed, much less alleged, by NFI in the initial complaint. It argues that NFI has simply attempted to correct its anticipatory filing by way of amended complaint.

In response, NFI argues that it served the North Carolina action on Blue Stuff, Inc. well within the 120 day service limit required by Federal Rule of Civil Procedure 4(m), and that its false advertising claims are independently meritorious, even absent the trademark dispute in this case.

It also argues that because the instant action is a suit for damages, rather than a declaratory judgment action, and that this Court therefore does not have any discretion in determining whether to hear this action.

Applying the factors to be considered—chronology, similarity of parties, and similarity of issues—the Court concludes that the first filed rule applies to this case. The North Carolina action was filed well before the Oklahoma action. Blue Stuff, Inc. and NFI are the only parties involved in either action. Furthermore, it is readily apparent to the Court that both the North Carolina and Oklahoma actions will require the resolution of the same trademark, false advertising, and state deceptive trade practices issues.

■ Having concluded that the first-filed rule applies to this case, the Court now turns to the question of whether this action constitutes forum shopping or anticipatory filing such that the Court should ignore the rule. As a preliminary matter, the Court rejects NFI's argument that the Court lacks discretion in this matter because it has filed a suit for damages which this Court *must* hear. It is well-settled law that a court has broad discretion in applying and construing the first-filed rule. *Plating Resources, Inc. v. UTI Corp.*, 47 F.Supp.2d at 903; *Guthy–Renker Fitness, L.L.C.*, 179 F.R.D. at 270. As a result, this Court has the discretionary and equitable power to determine whether it should hear this lawsuit or whether the lawsuit is more properly before the Oklahoma district court.

After a very thorough examination and consideration of the law and the circumstances of this case, the Court concludes that the anticipatory filing exception applies to the North Carolina action. The instant case is somewhat atypical in that disputes regarding the first-filed rule generally involve some settlement negotiations between the parties, whereupon one of the parties files a lawsuit without serving the other party, all the while continuing negotiations. *See, e.g., Guthy–Renker Fitness, L.L.C.*, 179 F.R.D. at 270–72 (discussing the typical circumstances in which the first-filed issue is raised). However, even though the parties had not engaged in any dispute settlement negotiations, it is clear that NFI attempted to control the forum of the action by filing its action with this Court. While the Court takes note of NFI's argument that it served Blue Stuff, Inc. within the requirements of Rule 4(m), it is impossible for the Court to ignore the fact that NFI waited until it was served with the Oklahoma action and then served Blue Stuff, Inc. with the North Carolina action *one day later*. Such behavior screams of forum shopping.

Furthermore, the fact that NFI did not bring the true dispute between the parties—the trademark dispute—into court speaks volumes. Rather than initially filing a declaratory judgment action with this Court to determine the trademark issues, NFI chose to file essentially its counterclaim against Blue Stuff, Inc. as the original lawsuit in the instant action. By doing so, NFI attempted to get the best of both worlds; Blue Stuff, Inc. was not given notice of the potentially infringing product being marketed and sold by NFI, and NFI also gained control of the forum of the future lawsuit resolving the dispute between the parties. NFI's amended complaint in the instant case, which was filed after it had already been served with the Oklahoma action, is the true center of the dispute between the parties.

Allowing NFI to control the forum in this manner is tantamount to allowing a tortfeasor to file a lawsuit against a victim prior to committing a tort, then requiring the victim to litigate his tort claim in the

forum where the tortfeasor filed prior to committing the tort. The Court recognizes that such is the nature of declaratory judgment actions generally; however, if NFI had simply brought the trademark dispute as a declaratory judgment action in the beginning, this forum dispute would have been avoided. Instead, NFI attempted to manipulate its legal position so that when Blue Stuff, Inc. inevitably filed a trademark lawsuit, it could argue that it had filed the first lawsuit.

It is well-recognized that these types of first-filed disputes occur frequently in the trademark context, and that courts have many times invoked the anticipatory filing exception with regard to hip-pocket declaratory judgment filings.[1] NFI cannot circumvent the law by silently filing a substantive lawsuit—which is really akin to a counterclaim—rather than filing a declaratory judgment action. *See McJunkin Corp. v. Cardinal Systems, Inc.,* 190 F.Supp.2d 874, 879 (S.D.W.Va.2002); *Big Baby Co. v. Schecter,* 812 F.Supp. 442, 443 (S.D.N.Y.1993).

*B.   § 1404(a) Motion to Transfer Venue*

█ Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a case to any other district where the case might have been brought, if such transfer is determined by the court in its discretion to be "in the interests of justice." 28 U.S.C. § 1404(a); *McDevitt & Street Co. v. Fid. & Deposit Co. of Maryland,* 737 F.Supp. 351, 353 (W.D.N.C.1990). Generally, a plaintiff's choice of forum should be accorded great weight, and should not be lightly disturbed; however, where the interests of justice weigh heavily in favor of transfer to another district, the court should transfer the case. *Jim Crockett Promotions, Inc.*

*v. Action Media Group, Inc.,* 751 F.Supp. 93, 95 (W.D.N.C.1990). When considering a motion to transfer, courts should consider, among other things, eleven factors: 1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws. *Id.* at 96. The factors are accorded different weights based on the court's discretion. *Id.*

█ Having set forth the criteria, the Court shall make the relevant inquiries with regard to this case.

*1) Plaintiff's choice of forum.* For reasons stated in section II.A. *supra,* the Court finds that this factor weighs very strongly in favor of transfer to Oklahoma.

*2) The residence of the parties.* Neither party resides in this District. Blue Stuff, Inc. resides in the Western District of Oklahoma, the forum for the Oklahoma action. NFI resides in Fayetteville, North Carolina. Either forum will require NFI to travel, whereas Oklahoma will require only NFI to travel. The Court finds that this consideration weighs in favor of transfer.

---

1. For a brief discussion, see *Indianapolis Motor Speedway v. Polaris Indus. Inc.,* 2000 WL 777895, at *2–*3 (S.D.Ind.2000). That case also acknowledges that a lengthy delay between filing and service of a lawsuit is entirely relevant to the analysis of whether to allow the first-filed lawsuit to control the forum. *Id.* at *3.

*3) Access to evidence.* No evidence is located in this District. Blue Stuff, Inc.'s records are located in the Western District of Oklahoma, and NFI's evidence is presumably located in Fayetteville. In order to try the case in this District, each party will bear the burden of transporting its evidence. If the case is transferred to Oklahoma, only NFI will be burdened with the transporting of evidence. Thus, this factor weighs slightly in favor of transfer.

*4) Availability of witnesses and process.* Again, neither party resides in this District. Thus, if trial of the matter is held in the Western District of North Carolina, each party will have to transport its witnesses.[2] On the other hand, if trial is held in Oklahoma, only NFI has the expense of transporting witnesses. This factor weighs in favor of transfer, albeit only slightly.

*5) Possibility of a view by the jury.* The Court has no knowledge of the necessity for a view, and the parties have not argued this point. Thus, the Court accords this factor no weight.

*6) The enforceability of a judgment.* As the parties are residents of different districts, the same difficulties in enforcing a judgment would be encountered by either party regardless of whether the matter is transferred. Thus, this factors weighs against transfer.

*7) The relative advantages and obstacles to a fair trial.* There are no arguments that trial in either district would be unfair or somehow biased. Thus, this factor weighs against transfer.

*8) Practical issues affecting trial expediency and efficiency.* Blue Stuff, Inc. suggests that because it has filed three similar trademark claims involving the same issues in the Western District of Oklahoma, transfer would encourage expediency as a result of the Oklahoma court's familiarity with Blue Stuff's arguments and business practices. It also argues that, although the claims have been filed against four separate defendants who each have their own counterclaims, the possibility of consolidation exists. NFI, on the other hand, argues that consolidation of the cases is highly unlikely and that the Oklahoma court has no interest in adjudicating this case, regardless of whether it is familiar with the subject matter.

The Court finds that this consideration weighs in favor of transfer. While there is obviously no guarantee that all of Blue Stuff, Inc.'s Oklahoma cases may be consolidated, it is nonetheless expedient to allow a court that is already familiar with Blue Stuff Inc.'s essential arguments to adjudicate this case as well. The four cases will likely be similar to one another. It is inefficient to have two different courts to become familiar with and adjudicate essentially the same claims, albeit against different defendants. The Court concludes that this factor weighs in favor of transfer.

*9) The relative court congestion.* As stated by Blue Stuff, Inc., this District requires approximately twice as long as the Western District of Oklahoma to proceed from the initial filing of a case to trial (23.5 months in this District and 12.17 in the Western District of Oklahoma), resulting, no doubt, from approximately twice as many weighted filings pending in this District per judge (681 in this District and 372 in the Western District of Oklahoma). Expediency considerations favor transfer.

---

**2.** Presumably, the witnesses will be predominantly employees of the companies, thus compulsory process appears not to be an issue.

*10) Home forum interests.* In both the North Carolina and Oklahoma actions, the respective plaintiffs have brought state law claims based on the laws of the forum state. Thus, regardless of whether the instant case is transferred to Oklahoma or adjudicated in this District, the law of another state will require interpretation. Further, neither the Western District of Oklahoma nor this District have any over-riding interests in adjudicating this case. Thus, the Court gives no weight to this factor.

*11) The avoidance of conflict of laws.* The parties have not indicated the presence of any conflicting law in this case, thus the Court accords this factor no weight.

The Court concludes that the majority of factors weigh in favor of transfer to the Western District of Oklahoma. As stated above, the Court concludes that not only should NFI's choice of forum not be accorded any weight, but also that NFI's choice of forum in fact weighs in favor of transfer. Furthermore, considering that the Oklahoma district court is presumably already familiar with this case, administrative efficiency issues weigh strongly in favor of transfer. After consideration of the foregoing factors, the Court concludes that Blue Stuff, Inc.'s Motion to Transfer Venue must be granted.

### ORDER

IT IS THEREFORE ORDERED that Blue Stuff, Inc.'s Motion to Dismiss is DENIED. IT IS FURTHER ORDERED that Blue Stuff, Inc.'s Motion to Transfer Venue is GRANTED. IT IS FURTHER ORDERED that this case is transferred to the Western District of Oklahoma.