Wachovia Bank v. Deutsche Bank Trust Co. Americas, 2006 NCBC 8.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
04 CVS 86

| | | |
|---|---|---|
| WACHOVIA BANK, National Association, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEUTSCHE BANK TRUST COMPANY | ) | **ORDER** |
| AMERICAS, formerly known as BANKERS | ) | |
| TRUST COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Kennedy Covington Lobdell & Hickman, LLP by John H. Culver and Sara W. Higgins; Hahn & Hessen, LLP by Maria A. Arnott and Steven J. Mandelsberg for Plaintiff Wachovia Bank, National Association.*

*Shumaker Loop & Kendrick, LLP by Peter Crane Anderson and Frederick M. Thurman, Jr.; Pillsbury Winthrop Shaw Pittman, LLP by Edward Flanders, F. Joseph Owens and Kenneth A. Newby for Defendant Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company.*

Diaz, Judge.

{1}     The Court heard this matter on April 24, 2006, on the Defendant's Motion for a Stay to Permit Trial in New York ("Stay Motion") pursuant to N.C. Gen. Stat. § 1-75.12.  After considering the Court file, the written Motion, the briefs and exhibits submitted by the parties, and the arguments of counsel, the Court **GRANTS** the Defendant's Motion. In support of its ruling, the Court enters the following:

## FINDINGS OF FACT

### Nature of the Case

{2}     This action arises out of a $150 million Asset Funding and Servicing Agreement (hereinafter "Asset Funding and Servicing Agreement" or "Credit Facility") entered into in 1999 among PrinVest Capital Corporation as Borrower, PrinVest Corporation as Servicer, Variable Funding Capital Corporation as Lender, First Union Capital Markets Corporation as Deal Agent, and Defendant Deutsche Bank Trust Company Americas as Backup Servicer and Collateral

Custodian. (Compl. ¶ 1.) The Credit Facility was connected to a loan program between the Plaintiff's predecessor-in-interest and PrinVest.

{3}     Plaintiff alleges that its losses resulted from the Defendant's "repeated and pervasive breaches of [its] contractual obligations" under the Credit Facility. (Compl. ¶ 1.) Specifically, Plaintiff alleges that the Defendant's breach of its duties as Backup Servicer and Collateral Custodian allowed PrinVest Capital Corporation to fraudulently increase its borrowing capacity by including assets in the borrowing base that did not meet the Credit Facility's eligibility criteria, thereby damaging Plaintiff. As a result, Plaintiff seeks to recover "damages of not less than $56,000,000 plus interest and expenses[.]" (Compl. ¶ 1.)

**The Parties and Related Entities**

{4}     Plaintiff Wachovia Bank, National Association ("Wachovia") is a national banking association with its principal place of business in Charlotte, North Carolina. (Compl. ¶ 2.) Wachovia is the successor-in-interest to First Union Securities, Inc. ("FUSI," formerly known as First Union Capital Markets Corp.) and the owner and holder of the loans at issue in this case. (Compl. ¶ 3.)[1]

{5}     Defendant Deutsche Bank Trust Company Americas ("Deutsche Bank"), formerly known as Bankers Trust Company, is a New York banking corporation doing business in North Carolina and maintaining its principal place of business in New York City. (Compl. ¶ 7.)

{6}     Wachovia Securities, Inc. ("Wachovia Securities") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. (Compl. ¶ 3.) Wachovia Securities is the successor-by-merger to FUSI. (*Id.*)

{7}     Variable Funding Capital Corporation ("VFCC") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. (Compl. ¶ 4.)

{8}     PrinVest LLC ("PVLLC") is a Delaware limited liability company formed in or around December 2001 and is the successor-by-merger to PrinVest Corp. ("PrinVest"). (Compl. ¶ 5.) Prior to its merger into PVLLC, PrinVest was a New Jersey corporation with its principal place of business in Lawrenceville, New Jersey. (*Id.*)

{9}     PrinVest Capital Corp. ("PrinVest Capital"), an affiliate of PrinVest, is a New Jersey corporation with its principal place of business in Lawrenceville, New Jersey. (Compl. ¶ 6.) PVLLC and PrinVest Capital are collectively referred to hereinafter as the "PrinVest Entities," unless referred to individually.

**Procedural Facts**

{10}     In late 1999, Deutsche Bank agreed to serve as the Backup Servicer and Collateral Custodian under the Credit Facility.  (Compl. ¶ 16.)  Under the terms of the Credit Facility, Deutsche Bank was obligated to perform "certain specific monitoring, reporting, oversight and collateral custodian functions" including, but not limited to, verifying the accuracy of the financial information PrinVest provided to Wachovia.  (Compl. ¶ 17.)

{11}     The Asset Funding and Servicing Agreement provides, *inter alia:*

> THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.  EACH OF THE PARTIES HERETO . . . HEREBY AGREES TO THE NON-EXCLUSIVE JURISDICTION OF ANY FEDERAL COURT LOCATED WITHIN THE STATE OF NEW YORK.  EACH OF THE PARTIES HERETO . . . HEREBY WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, AND ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER IN ANY OF THE AFOREMENTIONED COURTS[.]

(Exhibit H to Affidavit of Edward Flanders (hereinafter "Flanders Affidavit"), § 13.7 at p. 105.)

{12}     The events giving rise to the Plaintiff's claims in this case—Deutsche Bank's performance (and alleged breach) of its contractual obligations—took place in New York.  (Affidavit of Robert Frier (hereinafter "Frier Affidavit") ¶ 2.)

{13}     In early 2002, FUSI removed Deutsche Bank as Backup Servicer and Collateral Custodian.

{14}     From April 2002 until August 2002, Wachovia and Deutsche Bank engaged in discussions concerning Wachovia's claims that Deutsche Bank breached its duties under the Credit Facility.[2]  (Affidavit of Steven Mandelsberg (hereinafter "Mandelsberg Affidavit") ¶ 3.)

{15}     By letter dated December 11, 2003, together with a draft complaint, Wachovia advised Deutsche Bank that it intended to file suit within two weeks unless meaningful settlement discussions ensued.  (Exhibit A to Flanders Affidavit.)

{16}     On December 19, 2003, Deutsche Bank commenced a declaratory judgment action against Wachovia in New York state court (the "NY State Action") relating to its duties and potential liability under the Credit Facility, by filing (but not serving) a Summons with Notice ("Summons with Notice").[3]  (Exhibit B to Flanders Affidavit.)

{17}     On December 22, 2003, in response to the December 11 letter, Deutsche Bank advised

Wachovia that it was interested in engaging in settlement discussions.[4]   (Exhibit C to Flanders Affidavit.)

{18}    On January 5, 2004, Wachovia commenced this action in Mecklenburg County Superior Court (the "NC State Action") and served the complaint (the "Complaint") upon Deutsche Bank on January 8, 2004.

{19}    In January 2004, after Wachovia's service of the Complaint, the parties renewed settlement discussions and exchanged information pursuant to a Standstill, Confidentiality and Information Exchange Agreement (the "Standstill Agreement") dated February 13, 2004.  (Exhibit Z to Reply Affidavit of Edward Flanders in Support of Defendant's Stay Motion (hereinafter "Edward Flanders Reply Affidavit").)

{20}    The Standstill Agreement provided for the tolling of any statute of limitations period in the NC State Action and the NY State Action during the time set forth in the Agreement. Specifically, Paragraph 1(a) of the Standstill Agreement provides:

> Any statute of limitations period or time for making any filing or taking any other action in connection with the Parties' claims against each other in the Litigations[5] is tolled for the period beginning on December 19, 2003 and ending at midnight on [November 30, 2004] (the "Standstill Period")[6] whereupon any applicable statute of limitations period or time for making any filing or taking any other action in connection with the Litigations will begin to run again upon such termination.

(Exhibit Z, ¶ 1(a) to Edward Flanders Reply Affidavit.)

{21}    Under the Standstill Agreement, the parties also agreed not to take any action in furtherance of the Litigations during the Standstill Period.  (Exhibit Z, ¶ 1(b) to Edward Flanders Reply Affidavit.)

{22}    The settlement negotiations, which were ultimately unsuccessful, terminated at midnight on November 30, 2004, with the expiration of the Standstill Period.

{23}    On December 1, 2004, Deutsche Bank voluntarily dismissed the NY State Action, removed the present action to the United States District Court for the Western District of North Carolina (the "WDNC"), and commenced a declaratory judgment action in the United States District Court for the Southern District of New York (the "SDNY Action") relating to its duties and potential liability under the Asset Funding and Servicing Agreement.[7]   The parties to this action have entered into a stipulation staying the SDNY Action until the earlier of June 30, 2006, or this

Court's ruling on the present Motion.  (Exhibit G to Flanders Affidavit.)

{24}    On December 10, 2004, Wachovia moved in the WDNC to remand the present action. Deutsche Bank opposed the motion and cross-moved for transfer of the case to the Southern District of New York ("SDNY").

{25}    On March 4, 2005, United States Magistrate Judge Dennis L. Howell entered an Order granting Wachovia's motion to remand and denying Deutsche Bank's cross-motion to transfer venue as "moot."  (Exhibit BB to Edward Flanders Reply Affidavit.)

{26}    The District Court for the WDNC affirmed Magistrate Judge Howell's Order and the case was remanded to North Carolina State Court on November 8, 2005.

{27}    On December 12, 2005, Deutsche Bank filed the Motion now before the Court.

{28}    On January 13, 2006, the Chief Justice of the Supreme Court of North Carolina designated this matter as an "exceptional" case and assigned it to the North Carolina Business Court.

Based on the above Findings of Fact, the Court enters the following:

## CONCLUSIONS OF LAW

{29}    The precise question before the Court is whether to stay this case in favor of the SDNY Action.

{30}    This Court has authority to stay this action pursuant to N.C. Gen. Stat. § 1-75.12, which states:

> a) When Stay May be Granted. -- If, in any action pending in any court of this State, the judge shall find that it would work substantial injustice for the action to be tried in a court of this State, the judge on motion of any party may enter an order to stay further proceedings in the action in this State.  A moving party under this subsection must stipulate his consent to suit in another jurisdiction found by the judge to provide a convenient, reasonable and fair place of trial.

{31}    The decision to grant or deny a stay "'is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion.'" *Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard,* 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993) (internal citation omitted).

{32}    In determining whether to grant a stay under N.C.G.S. § 1-75.12, the trial court may consider the following factors:  (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern,

(7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by the plaintiff, and (10) all other practical considerations. *Id.*

{33} The trial court is not obligated to consider each enumerated factor, nor is it necessary that the court find that all factors positively support a stay. *Id.* at 357, 435 S.E.2d at 574. Instead, the court acts within its discretion if it considers whether "(1) a substantial injustice would result if the trial court denied the stay, (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair." *Id.*

{34} The Court now proceeds to apply these principles to the facts of this case.

### (a) The Nature of the Case

{35} This case involves contract claims arising from the Defendant's alleged breach of an Asset Funding and Servicing Agreement entered into among the Defendant, the Plaintiff's predecessor-in-interest, and other third-party entities. Specifically, Wachovia asserts that, had Deutsche Bank performed its duties as set forth in the Agreement, it would have discovered PrinVest's misrepresentations and/or fraud, and that Deutsche Bank's failure to do so caused Wachovia's damages.

{36} The claims asserted in this action arise out of a New York transaction. The Defendant is a New York corporation with its principal place of business in New York City, and the events giving rise to the Plaintiff's claims—Deutsche Bank's alleged breach of its contractual obligations as Backup Servicer and Collateral Custodian—took place in New York. (Frier Affidavit ¶ 2.) In addition, the Asset Funding and Servicing Agreement makes clear that New York law [8] governs disputes arising out of the Agreement. (Exhibit H to Flanders Affidavit, § 13.7 at p. 105.) The parties also consented in the Agreement to the *non-exclusive* jurisdiction of the New York federal courts and waived any objection that such courts were improper venues to resolve claims arising out of the Agreement. (*Id.*)

{37} Despite the fact that this case involves a New York transaction and the Plaintiff's claims are governed by New York law, North Carolina has some interest in resolving this dispute. The Plaintiff maintains its principal place of business in Charlotte, North Carolina. Additionally, this case involves one of this State's largest financial banking institutions. Moreover, Deutsche Bank is registered to do business in North Carolina, and it transacts substantial business in this State. Thus, North Carolina has an interest in resolving a dispute involving businesses with a

substantial presence in this State.

{38}     On balance, however, this factor favors (if only slightly) the granting of a stay.

     (b)     **The Convenience of the Witnesses & the Availability of Compulsory Process to Produce Witnesses**

{39}     Many of Plaintiff's potential witnesses are current or former employees who reside and/or are employed in Charlotte, North Carolina.  As employees, such witnesses are presumably under Wachovia's control and would appear at trial in New York.  Similarly, many of Deutsche Bank's witnesses are employees and thus would be available to testify in North Carolina.  However, other Deutsche Bank witnesses are third-party professionals (lawyers, accountants, investment bankers, etc.) who were involved in the origination, management, or administration of the Credit Facility.  Many of these witnesses are located in New York, New Jersey, or Pennsylvania, within 100 miles of the SDNY and, therefore, are subject to the subpoena power of that court.  These witnesses are not within the control of either party and could not be compelled to appear at trial in North Carolina.

{40}     On balance, these two factors weigh in favor of granting the stay.

     (c)     **The Relative Ease of Access to Sources of Proof**

{41}     While the Plaintiff's records are located in North Carolina, and most of the documents related to the Defendant's role as Backup Servicer and Collateral Custodian under the Credit Facility are located in New York, the relevant documents and other sources of proof are readily accessible to both parties.  As such, the locations of sources of proof do not clearly point to one jurisdiction as more or less convenient, particularly since both parties have substantial financial resources to expend on litigation.

{42}     Accordingly, this factor does not affect the balance one way or the other.

     (d)     **The Applicable Law**

{43}     As noted earlier, the relevant contract (i.e., the Asset Funding and Servicing Agreement) contains a choice of law provision that requires the application of New York law to its interpretation.  (Exhibit H to Flanders Affidavit, § 13.7 at p. 105.) The Plaintiff does not dispute that New York's substantive law governs its breach of contract claims.  Based on the choice of law provision, the Court finds that there was at least some understanding between the parties that the SDNY would be a suitable forum for resolving claims arising out of the Agreement.

{44}     Accordingly, this factor weighs in favor of granting a stay.

     (e)     **The Burden of Litigating Matters Not of Local Concern & the Desirability of**

## Litigating Matters of Local Concern in Local Courts

{45}   In my view, both North Carolina and New York have an interest in litigating this dispute.  Plaintiff Wachovia maintains its principal office in Charlotte, North Carolina.  Additionally, Wachovia is one of the largest employers in Mecklenburg County and this State.  Moreover, Deutsche Bank is registered to do business in North Carolina, and it does not dispute that it transacts substantial business in this State.  Due to the parties' presence in this State, North Carolina clearly has an interest in resolving this dispute.

{46}   On the other hand, New York also has a significant interest in supervising this litigation.  As noted earlier, this case involves a New York transaction. The Defendant Deutsche Bank is a New York corporation and the relevant contract is governed by New York law.  Additionally, a number of other witnesses and third parties (including other signatories to the Credit Facility) are New Jersey corporations and employees.  These witnesses are beyond the subpoena power of this Court, but most (if not all) are subject to the SDNY's compulsory process.

{47}   Thus, on balance, these factors favor the granting of a stay.

   (f)   **Convenience and Access to Another Forum**

{48}   The Asset Funding and Servicing Agreement makes clear that the parties considered New York a suitable—although not exclusive—forum for litigating disputes arising out of the Agreement.  As previously noted, the parties agreed to the application of New York law to any claims arising under the Agreement, and consented to the *non-exclusive* jurisdiction of the New York federal courts, waiving any objection to any action brought in such a court on *forum non conveniens* or venue grounds.  Moreover, Wachovia has retained litigation counsel in New York.  For these reasons, there is little doubt that New York can provide the parties with a fair and convenient forum.

{49}   On the other hand, this Court is equally capable of resolving this matter with due regard for the rights of the parties.  Both parties are large financial institutions capable of trying a case in North Carolina or any other jurisdiction.  And, both parties have also retained counsel here in North Carolina.

{50}   On balance, this factor weighs in favor of granting the stay.

   (g)   **Choice of Forum by the Plaintiff**

{51}   Courts generally give great deference to a plaintiff's choice of forum, and a defendant must satisfy a heavy burden to alter that choice by transferring or staying the case.  *See Firstar*

*Bank, N.A. v. Interlease 757 Aircraft Investors, L.L.C.*, 2002 U.S. Dist. LEXIS 20974, *10 (M.D.N.C. Aug. 23, 2002) (citation omitted) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.") The weight accorded to a plaintiff's choice of forum is particularly appropriate where, as in this case, the plaintiff selected its home forum to bring suit. *Long Haymes Carr, Inc. v. VueCom, Inc.*, 1997 U.S. Dist. LEXIS 21939, *11 (M.D.N.C. Dec. 12, 1997); *see also Bates v. J.C. Penney Co*, 624 F. Supp. 226, 227 (W.D.N.C. 1985) ("Plaintiffs' choice of forum should be given especially strong consideration since the forum they chose is in the district in which they reside."). Wachovia is a national banking association, but it maintains its principal place of business in Charlotte, North Carolina. Clearly, North Carolina is Wachovia's home forum.

{52} Federal courts have also refused to grant a stay (or transfer) where doing so would "'simply shift the inconvenience from one party to another.'" *Sara Lee Corp. v. Gregg*, 2002 U.S. Dist. LEXIS 26985, *15 (M.D.N.C. July 31, 2002) (citations omitted); *see also Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F. Supp. 93, 95 (W.D.N.C. 1990) (noting that a motion to transfer will not be granted if it would "merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all the factors are considered."). Thus, for Deutsche Bank to prevail on its Stay Motion, it must show (1) "more than a bare balance of convenience in [its] favor" and (2) "that a [stay] does more than merely shift the inconvenience." *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F. Supp. 446, 451 (W.D.N.C 1989) (citation omitted).

{53} Nevertheless, our State's appellate cases have discounted a plaintiff's choice of forum where a defendant has made a sufficiently strong showing as to the other relevant factors. *See, e.g., Lawyers Mut. Liab. Ins. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 435 S.E.2d 571 (1993); *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev. Co*, 46 N.C. App. 707, 266 S.E.2d 368 (1980).

{54} Deutsche Bank argues that Wachovia's choice of forum is not entitled to any deference. First, Deutsche Bank argues that Wachovia's choice of forum "should not be given any weight in determining whether a stay is warranted because it has consented, and waived any objection, to the SDNY as a proper forum for this litigation." (Defendant's Memo. at p. 16.) As previously discussed, the parties did consent to the *non-exclusive* jurisdiction of the SDNY. (Exhibit H to Flanders Affidavit, § 13.7 at p. 105.) Thus, although the consent to jurisdiction clause establishes that the parties considered the SDNY a suitable forum, it is merely permissive. If the

parties had intended that the SDNY be the only forum for litigating disputes arising out of the Credit Facility, then they could have provided such, but they chose not to do so. The cases cited by Deutsche Bank are distinguishable in that they involve mandatory forum selection clauses. (Plaintiff's Memorandum in Opposition to Defendant's Motion to Stay at p. 9.)In sum, while the consent to jurisdiction clause is relevant to the analysis, it is not dispositive.

{55}     Second, Deutsche Bank argues that Wachovia's choice of forum is not entitled to any deference because this action was not, in fact, the first filed. Specifically, Deutsche Bank asserts that, because the parties agreed to an inception date for the Standstill Agreement that pre-dated both actions, the filing of the cases "occurred, for all practical purposes, simultaneously." (Defendant's Reply Memorandum of Law in Support of the Stay Motion at p. 4.)

{56}     Deutsche Bank's interpretation of the Standstill Agreement, while novel, misses the mark. Wachovia filed this action on January 5, 2004 and Deutsche filed the SDNY Action almost one year later, on December 1, 2004. Nothing in the Standstill Agreement alters these basic facts. Therefore, Wachovia won the race to the courthouse of its choice.

{57}     This factor weighs against granting the stay.

### (h)     All other Practical Considerations

{58}     Deutsche Bank argues that to allow this action to proceed simultaneously with the SDNY Action would "subject the judicial process and the parties to needless burden, hardship, and expense since the SDNY Action will proceed in any event." (Defendant's Memo. at p. 3.) The parties here, however, are sophisticated business entities with resources sufficient to litigate their dispute in this or any other jurisdiction. And, both parties have retained counsel in New York and North Carolina. Moreover, while there may be some inefficiency in proceeding with duplicative actions, this will always be the case when a court is asked to consider a stay motion. Accordingly, this factor alone is not determinative of whether this action should proceed.

{59}     A critical practical consideration, however, is that the SDNY appears to have jurisdiction over many (if not all) of the relevant third parties and witnesses to the disputed transactions, whereas this Court does not. And, while this Court is certainly capable of resolving that portion of the litigation before it, judicial economy and the conservation of judicial resources weigh in favor of a stay.

### ORDER

{60}     I find that both North Carolina and New York would be reasonable, fair and convenient

forums for trying this case.

{61}   I find further that the factors relevant to the Court's analysis of the Stay Motion favor a stay.

{62}   I also find that, while the Plaintiff's choice of forum generally is entitled to substantial weight, its significance here is diluted by (a) the consent to jurisdiction clause in the Asset Funding and Servicing Agreement, which contemplated that New York would be a suitable forum for litigating any disputes arising out of the Agreement; and (b) the SDNY's more expansive jurisdictional reach over other parties and witnesses.

{63}   As a result, I conclude that it would work a substantial injustice for this action to be tried in North Carolina.

{64}   Accordingly, the Court **GRANTS** the Defendant's Stay Motion, subject to the Court's authority pursuant to N.C.G.S. § 1-75.12(b) to modify the stay order and take such other action as the interests of justice require.

This the 2nd day of June, 2006.

---

[1] Defendant disputes that Wachovia is the proper party in interest.   For purposes of this Stay Motion, the Court assumes that Wachovia has standing to bring this action.

[2] Deutsche Bank contends it first learned of Wachovia's claims at a meeting on April 24, 2002, when Wachovia representatives met with Deutsche Bank personnel to discuss Wachovia's claims under the Credit Facility. (Defendant's Memorandum of Law in Support of Defendant's Motion for a Stay to Permit Trial in a Foreign Jurisdiction ("Defendant's Memo.") at p. 7.)

[3] Deutsche Bank did not serve the Summons with Notice until April 2004, some four months later.

[4] In its December 22, 2003 letter to Wachovia, Deutsche Bank did not mention that it had filed the Summons with Notice against the Plaintiff three days earlier.

[5] The Standstill Agreement defines "Litigations" to include the NC State Action and the NY State Action.

[6] The Standstill Period originally expired on March 31, 2004, but was extended until November 30, 2004 by the Seventh Amendment to Standstill, Confidentiality and Information Exchange Agreement.  (Exhibit Z to Flanders Reply Affidavit.)

[7] In the SDNY Action, Deutsche Bank also seeks not less than $3 million in damages from (a) the PrinVest Entities for contractual indemnification; (b) the former PrinVest officers for fraud; and (c) Wachovia Securities for breach of its implied duty of good faith and fair dealing and unjust enrichment for concealing PrinVest's misrepresentations and fraudulent behavior, and for impairing Deutsche Bank's contractual indemnification rights against PrinVest.

[8] At the hearing on the Stay Motion, Deutsche Bank insisted that this case is not a "garden-variety" breach of contract action; but, rather, involves a highly-specialized body of New York banking law, which the federal courts in New York are better prepared to address.  Although the choice of law provision weighs in favor of granting the motion to stay, I am confident that this Court can competently apply New York law to this breach of contract action.