La Mack v. Obeid, 2015 NCBC 21.

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
                                      SUPERIOR COURT DIVISION
MECKLENBURG COUNTY                  14 CVS 12010

|  |  |
| --- | --- |
| CHRISTOPHER LA MACK, DANTE A. MASSARO, and GEMINI REAL ESTATE ADVISORS, LLC, | |
| Plaintiffs, | **ORDER AND OPINION** |
| v. | |
| WILLIAM T. OBEID, | |
| Defendant. | |

{1}    **THIS MATTER** is before the Court upon Defendant William T. Obeid's ("Obeid" or "Defendant") Motion to Dismiss Plaintiffs Christopher La Mack ("La Mack"), Dante A. Massaro ("Massaro"), and Gemini Real Estate Advisors, LLC's ("Gemini") (collectively "Plaintiffs") First Amended Complaint ("Motion to Dismiss") or Alternatively to Stay the Action ("Motion to Stay") (collectively, the "Motions") in the above-captioned case.

{2}    After considering the parties' pleadings, written motions and submissions, and arguments at the October 28, 2014 hearing, the Court hereby **DENIES** Defendant's Motion to Dismiss and **GRANTS** Defendant's Motion to Stay.

> *McGuire Woods LLP by Robert A. Muckenfuss, Elizabeth Zwickert Timmermans, and Justin T. Yedor, for Plaintiffs Christopher La Mack, Dante A. Massaro, and Gemini Real Estate Advisors, LLC.*

> *Smith Moore Leatherwood LLP by Robert R. Marcus and C. Bailey King, Jr., for Defendant William T. Obeid.*

Bledsoe, Judge.

I.

BACKGROUND

{3}     The Court recites the allegations set forth in the parties' papers that are relevant for purposes of resolving the present Motions.[1]

{4}     Gemini is a closely held Delaware limited-liability company with its principal place of business in New York, New York and an office in Mecklenburg County, North Carolina.  (First Am. Compl. ¶ 3.)

{5}     Gemini was formed in 2003 to "acquire, own, operate, improve, manage and dispose of commercial real estate."  (First Am. Compl. ¶ 20; Amended and Restated Operating Agreement of Gemini Real Estate Advisors, LLC dated February 19, 2009 ("Amended Operating Agreement"),[2] Ex. D.)

{6}     La Mack, Massaro, and Obeid are Gemini's only members, with each owning a one-third membership interest in the company.  (Am. Oper. Agrmt., p. 39, Ex. A; *see also* First Am. Compl. ¶¶ 17–18.)

{7}     Each Plaintiff is also a manager of Gemini.  (Am. Oper. Agrmt., p. 45, Ex. C.)

---

[1] "When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings." *Dare County v. N.C. Dep't of Ins.*, 207 N.C. App. 600, 610, 701 S.E.2d 368, 375 (2010) (alteration in original) (quoting *Dep't of Trans. v. Blue*, 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001), *disc. review denied*, 356 N.C. 434, 572 S.E.2d 429 (2002)).  Similarly, when deciding a motion to dismiss under Rule 12(b)(6), the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers," even if those documents are not attached thereto. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (citing *Robertson v. Boyd*, 88 N.C. App. 437, 441, 363 S.E.2d 672, 675 (1988)).

[2] Gemini's Amended Operating Agreement is attached to Plaintiff's Complaint and First Amended Complaint as Exhibit A.

{8} Under the Amended Operating Agreement, Obeid was appointed Gemini's initial Operating Manager. (*See* First Am. Compl. ¶¶ 22–23; Am. Oper. Agrmt. § 5.16.) As Operating Manager, Obeid was "empowered to carry out the management and operational policies of the Company as set forth and determined by the Managers." (Am. Oper. Agrmt. § 5.16.) The Agreement provided that Obeid could "act on behalf of the Company and [] execute any and all documents, instruments and agreements . . ." with La Mack and Massaro's approval. (*See* Am. Oper. Agrmt. § 5.16; First Am. Compl. ¶ 24.)

{9} Over time, each of the managers began to pursue different types of projects based on his particular skillset and interests. In particular, Obeid focused on hospitality projects, with an emphasis on independent and boutique hotels, while La Mack and Massaro focused on Gemini's retail projects, including grocery, fitness, and department stores. Obeid alleges that over time, his projects "performed significantly better" than La Mack and Massaro's projects, and that his greater relative contribution to Gemini became even more pronounced over the last five years. (Def.'s Br. Supp. Mot., p. 4.)

{10} In mid-2013, Obeid proposed restructuring Gemini to mitigate the risks between its retail and hospitality sectors and to allow each members' economic interest in Gemini to more accurately reflect his respective contribution. (Def.'s Br. Supp. Mot., p. 5.) La Mack, Massaro, and Obeid agreed to discuss Obeid's proposal at a March 28, 2014 meeting. (Def.'s Br. Supp. Mot., p. 5.) At the meeting, Gemini's members allegedly agreed in principle to create two new LLC's – one dedicated to

Gemini's retail business and the types of projects La Mack and Massaro had been pursuing (the "Retail LLC") and the other dedicated to Gemini's hospitality business and the types of projects Obeid had developed (the "Hospitality LLC"). (Def.'s Br. Supp. Mot., p. 5.) Under the alleged agreement, Gemini would wholly own the Retail LLC but only retain a 30% interest in the Hospitality LLC, with Obeid owning the remaining 70% interest. (Def.'s Br. Supp. Mot., p. 5.)

{11} After allegedly agreeing to this new business model, however, Obeid contends that La Mack and Massaro advised him that they wanted a "business divorce" and to negotiate his separation from Gemini. (Def.'s Br. Supp. Mot., p. 6.) Obeid asserts that thereafter he called a special meeting of the managers to discuss the "business divorce" on July 1, 2014, but that at that meeting, La Mack and Massaro, without prior notice to Obeid, voted to remove Obeid as Operating Manager and replace him with Massaro. (Def.'s Br. Supp. Mot., p. 6; *see also* Pls.' Resp. Opp. Def.'s Mot., p. 4.)

{12} That same day, La Mack and Massaro, "individually and as members of and on behalf of Gemini," filed this action against Gemini and Obeid ("individually and as a manager of Gemini") in Mecklenburg County, North Carolina Superior Court (the "North Carolina Action") (Compl., pp. 1, 4; *see* Def.'s Br. Supp. Mot., pp. 1, 6), purporting to allege direct and derivative claims against Obeid to recover damages arising out of Obeid's alleged breach of the Amended Operating Agreement, breach of fiduciary duty, conversion, negligent misrepresentation, and unjust enrichment (Compl. ¶ 1).

{13}   Contemporaneously with the filing of the Complaint, La Mack and Massaro filed a notice of designation of this case to the North Carolina Business Court. The case was thereafter designated a mandatory complex business case and assigned to the undersigned on July 7, 2014.

{14}   La Mack and Massaro did not attempt service of the North Carolina Action on Obeid until approximately six weeks after filing. (Def.'s Br. Supp. Mot., p. 2.)

{15}   On August 1, 2014, Obeid filed an action in the United States District Court for the Southern District of New York (the "New York Court"), bringing claims against La Mack and Massaro "directly and derivatively on behalf of Gemini Real Estate Advisors LLC [and various entities created by Obeid, La Mack, and Massaro to develop Gemini's real estate projects]" (the "New York Action"). (Def.'s Br. Opp. Mot. for TRO, Ex. A titled *Obeid v. La Mack, et al.*, Case No. 14-cv-06498-LTS (S.D.N.Y., Aug. 1, 2014).)

{16}   Obeid served the New York Action on La Mack and Massaro on August 14, 2014. (Def.'s Mot. Dismiss ¶ 3.) Immediately thereafter, on August 15, 2014, La Mack and Massaro began efforts to serve the North Carolina Action on Obeid. (Def.'s Br. Supp. Mot., pp. 2, 7.)[3]

{17}   Obeid subsequently filed an Amended Verified Complaint in the New York Action on August 22, 2014. (Def.'s Br. Supp. Mot., Ex. A titled *Obeid v. La Mack, et*

---

[3] According to an Affidavit of Attempted Service filed in the New York Action, La Mack and Massaro first attempted to serve Obeid in the North Carolina Action the day after they were served with the Complaint in the New York Action. A copy of the Affidavit of Attempted Service is attached as Exhibit B to Defendant's Brief in Support of the Motion to Dismiss.

*al.*, Case No. 14-cv-06498-LTS (S.D.N.Y. Aug. 22, 2014).)  La Mack and Massaro thereafter moved the New York Court to dismiss or, alternatively, to stay the New York Action in favor of the North Carolina Action.  On October 31, 2014, the New York Court denied La Mack and Massaro's motion.[4]  (*See* Pls.' Resp. to Def.'s Notice of Issuance of Order, Ex. A, p. 5.)

{18}   On August 28, 2014, Obeid filed a Motion to Dismiss or Alternatively to Stay the [North Carolina] Action pursuant to Rules 12(b)(1) and (12)(b)(6) of the North Carolina Rules of Civil Procedure, arguing that La Mack and Massaro lacked standing to bring derivative claims on behalf of Gemini, necessitating the dismissal of the North Carolina Action and, alternatively, seeking a stay in favor of the New York Action.  (Def.'s Mot. Dismiss ¶ 2.)[5]  In particular, Obeid contended that because La Mack and Massaro owned a combined 66.66% ownership interest in Gemini (Am. Oper. Agrmt., Ex. A, p. 39), they could have authorized Gemini to bring the North Carolina Action as a direct action; as such, La Mack and Massaro's admitted failure to make demand on Gemini (and their claim of alleged demand futility) required dismissal of the Complaint.  (Def.'s Mot. Dismiss ¶ 2.)

{19}   Soon thereafter, on September 2, 2014, La Mack and Massaro filed a First Amended Complaint adding Gemini as a Plaintiff, removing Gemini as a nominal Defendant, and abandoning the individual Plaintiffs' derivative claims, this time

---

[4] The New York Court's Order is attached as Exhibit A to Defendant's Notice of Issuance of Order, filed November 3, 2014.

[5] Obeid's original Motion to Dismiss or Alternatively Stay Action lists paragraphs two and three as "2."

asserting only direct claims against Obeid.[6] (Pls.' Resp. Opp. Def.'s Mot., p. 11, fn. 5.) Plaintiffs also discarded their claim for unjust enrichment and added a claim for tortious interference with prospective economic advantage. (Pls.' Resp. Opp. Def.'s Mot., p. 11, fn. 5.) Obeid responded by filing the Motion to Dismiss and Motion to Stay on September 16, 2014. The Motions are now ripe for resolution.

II.

ANALYSIS

**A. Motion to Dismiss**

{20} Obeid contends that because La Mack and Massaro lacked standing to bring their initial Complaint, the Court lacks subject matter jurisdiction over the action, thereby making the Complaint a legal nullity which could not be amended. As a result, Obeid argues that the First Amended Complaint must be dismissed, and if the claims therein are to be advanced at all, they must be asserted in a new action. (Def.'s Mot. Dismiss ¶¶ 4–5.)

{21} As an initial matter, the Court notes that "[a] universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964). Relying on this principle, our courts have held that if a plaintiff was "[w]ithout standing to bring [an] initial complaint, there was no valid complaint to which the amended complaint could relate back." *Coderre v. Futrell*, 736 S.E.2d 784, 787 (N.C.

---

[6] Plaintiffs assert direct claims against Obeid in the First Amended Complaint for breach of the Amended Operating Agreement, breach of fiduciary duty, conversion, negligent misrepresentation, and tortious interference with prospective economic advantage. (*see generally* First Am. Compl.)

Ct. App. 2012). As applied here, if the individual Plaintiffs did not have standing to assert any of the claims in the initial Complaint, the initial Complaint is a legal nullity to which amendment is impossible, and dismissal of the First Amended Complaint is required.

{22} Turning then to an examination of the individual Plaintiffs' claims in the initial Complaint, the Court first notes that La Mack and Massaro purported to assert both direct and derivative claims. As a result, even if Obeid is correct that Plaintiffs did not have standing to assert derivative claims in the initial Complaint, the Court would still retain subject matter jurisdiction over any claims Plaintiffs have properly brought in their direct or individual capacity. Accordingly, the Court first determines whether the individual Plaintiffs alleged valid direct claims in their initial Complaint.

{23} La Mack and Massaro purport to allege three direct claims against Obeid in their initial Complaint – Breach of the Amended Operating Agreement, Breach of Fiduciary Duty, and Negligent Misrepresentation (collectively, "Individual Claims"). Obeid argues that these claims should be dismissed for lack of standing, because La Mack and Massaro have "fail[ed] to allege any 'direct injury' they have suffered 'independent' of the alleged injuries to [Gemini]." (Def.'s Br. Supp. Mot., p. 8, fn. 5) (citation omitted). In response, La Mack and Massaro contend their injury is "based not solely on their membership interest in Gemini, but also on their rights to participate in the management of Gemini." (Pls.' Resp. Opp. Def.'s Mot., p. 8.)

{24}  North Carolina courts "look to the laws of the state in which the company is incorporated to determine the procedural prerequisites and whether the claim[s are] derivative or individual." *Technik v. WinWholesale*, Inc., 2012 NCBC 5 ¶ 25 (N.C. Super. Ct. Jan. 13, 2012), http://www.ncbusinesscourt.net/opinions/2012_NCBC_5.pdf; *see also Scott v. Lackey*, 2012 NCBC 58 ¶ 32 (N.C. Super. Ct. Dec. 3, 2012), http://www.ncbusinesscourt.net/opinions/2012_NCBC_58.pdf ("[T]he law of corporate derivative suits should [] apply to limited liability companies to determine the governing law for assessing whether claims may be brought individually or derivatively.").

{25}  Gemini is a limited liability company formed in Delaware.  (First Am. Compl. ¶ 3.)  Thus, the Court will look to Delaware law to determine whether Plaintiffs' claims may be brought as direct or derivative.

{26}  "Under Delaware law, whether [La Mack and Massaro] properly assert[] direct or derivative claims 'must turn solely on the following questions: (1) who suffered the alleged harm ([Gemini] or [La Mack and Massaro], individually); and (2) who would receive the benefit of any recovery or other remedy ([Gemini] or [La Mack and Massaro], individually)?'" *Scott*, 2012 NCBC 58 ¶ 36 (quoting *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)).  "To make this determination, the Court will not be bound by [La Mack and Massaro]'s classification of the claim as direct or derivative, but will look to the complaint as a whole to

determine if the injury alleged falls directly on [Gemini] or the individual." *Id.* (citing *In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 997 (Del. Ch. 2004)).

{27} "Delaware courts typically refuse to extend standing for direct claims to plaintiffs alleging an injury arising solely from an ownership interest in [a] company, because their harm would be felt only secondarily to the direct harm to the company." *Id.* ¶ 37 (citing *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008)). Thus, in order to be properly classified as an individual claim, "'[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation.'" *Id.* ¶ 36 (quoting *Tooley*, 845 A.2d at 1039). *See Feldman*, 951 A.2d at 733 ("Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature.").

{28} Of particular relevance here, the denial of a shareholder's right to vote on important company matters is nearly always, under Delaware law, a direct harm that is unique to the individual. *See In re Ebix, Inc.*, 2014 Del. Ch. LEXIS 132, at *48 (Del. Ch. July 24, 2014) ("Where a shareholder has been denied one of the most critical rights he or she possesses–the right to a fully informed vote–the harm suffered is almost always an individual, not corporate, harm.") (quoting *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 601 (Del. Ch. Feb. 6, 2007)). This principle applies with equal force when a manager of an LLC is denied the manager's contractual right to vote on matters impacting the LLC. *See Bakerman v. Sidney Frank Importing Co.*, 2006 Del. Ch. LEXIS 180 *69–70 (Del. Ch. Oct. 16, 2006)

("[Plaintiff]'s contract and good faith and fair dealing claims are direct claims because they allege that defendants deprived [plaintiff] of his voting rights under the LLC's Operating Agreement, and because [plaintiff] would receive the benefit of any recovery.").

{29} Here, the individual Plaintiffs allege that they have been injured by Obeid's denial of their right to vote as managers of Gemini.

{30} For example, in their claim for breach of the Amended Operating Agreement, La Mack and Massaro allege in the initial Complaint (i) that the Amended Operating Agreement was a "valid and enforceable contract" they entered with Obeid (Compl. ¶¶ 22, 40); (ii) Obeid breached the Amended Operating Agreement by unilaterally acting on behalf of the company by, *inter alia*, executing a hotel deal in Miami, Florida (the "Miami Hotel Deal"), without allowing La Mack and Massaro to first vote on the deal (Compl. ¶¶ 26–31, 43); and (iii) Obeid's actions harmed La Mack and Massaro as parties to the Amended Operating Agreement (Compl. ¶ 48). Most notably, the individual Plaintiffs allege that Obeid usurped La Mack and Massaro's right to vote on critical company decisions by unilaterally acting without their approval. (Compl. ¶¶ 26, 33, 36.) Obeid also allegedly "induced La Mack and Massaro into signing a line of credit for which [they] are now personally liable." (Compl. ¶¶ 26–31; Pls.' Br. Opp. Def.'s Mot., p. 9.)

{31} Similarly, as support for their negligent misrepresentation claim, La Mack and Massaro allege in the initial Complaint that Obeid "concealed the Miami Hotel Deal from [them] until substantial Company funds had already been expended,"

(Compl. ¶ 63), thereby preventing them from exercising their "right to approve or disapprove substantial expenditures for such projects," (Compl. ¶ 67), and thereby denying them the right to vote on important company matters.

{32} Accordingly, the Court finds that La Mack and Massaro's claims for breach of the Amended Operating Agreement and for negligent misrepresentation in the initial Complaint are properly characterized as direct claims, not derivative claims. As such, the Court concludes that the individual Plaintiffs had standing under Delaware law to assert these direct claims in the initial Complaint. Thus, even if Obeid is correct that La Mack and Massaro did not have standing to assert the derivative claims set forth in the initial Complaint,[7] due to the presence of the direct claims against Obeid, the initial Complaint is not a legal nullity, and the Court had subject matter jurisdiction over the initial Complaint.

{33} Therefore, because the Court had subject matter jurisdiction over the initial Complaint, Obeid's Motion to Dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction should be denied.

## B. Motion to Stay

{34} N.C. Gen. Stat. § 1-75.12(a) provides that "[i]f, in any action pending in any court of this State, the judge shall find that it would work substantial injustice for the action to be tried in a court of this State, the judge on motion of any party may enter an order to stay further proceedings in the action in this State." The Court's

---

[7] In light of the Court's determination that Plaintiffs have asserted direct claims in the initial Complaint, the Court declines to address whether Plaintiffs asserted valid derivative claims in the initial Complaint.

decision to grant or deny a stay is a matter within its reasonable discretion. *Home Indem. Co. v. Hoechst-Celanese Corp.*, 99 N.C. App. 322, 325, 393 S.E.2d 118, 120 (1990).

{35}   The North Carolina courts have held that "[i]n determining whether to grant a stay under G.S. § 1-75.12, the trial court may consider the following factors:

> (1) the nature of the case, (2) the convenience of the witnesses, (3) the availability of compulsory process to produce witnesses, (4) the relative ease of access to sources of proof, (5) the applicable law, (6) the burden of litigating matters not of local concern, (7) the desirability of litigating matters of local concern in local courts, (8) convenience and access to another forum, (9) choice of forum by plaintiff, and (10) all other practical considerations.

*Lawyers Mut. Liab. Ins. Co. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993) (citing *Motor Inn Mgmt., Inc. v. Irvin-Fuller Dev. Co., Inc.*, 46 N.C. App. 707, 713, 266 S.E.2d 368, 371, *appeal dismissed and disc. review denied*, 301 N.C. 93, 273 S.E.2d 299 (1980)).

{36}   The Court is not required to consider each enumerated factor, but must consider all factors that are relevant to the case in deciding whether a stay is warranted. *Id.* at 357, 435 S.E.2d at 574. "[I]t is not necessary [for] all factors [to] positively support a stay, as long as [the Court] is able to conclude that (1) a substantial injustice would result if the [stay was denied], (2) the stay is warranted by those factors present, and (3) the alternative forum is convenient, reasonable, and fair." *Id.*

{37}   Beginning with the ninth factor first, the Court notes that plaintiffs' choice of forum ordinarily is given great deference, especially when plaintiffs select their

home forum to bring suit. *Wachovia Bank v. Harbinger Capital Partners Master Fund I, Ltd.*, 2008 NCBC 6 ¶ 62 (N.C. Super. Ct. Mar. 13, 2008), http://www.ncbusinesscourt.net/opinions/2008%20NCBC%206.pdf (citation omitted); *Wachovia Bank v. Deutsche Bank Trust Co. Ams.*, 2006 NCBC 8 ¶ 51 (N.C. Super. Ct. June 2, 2006), http://www.ncbusinesscourt.net/opinions/2006%20NCBC%208.htm ("The weight accorded to [] plaintiff[s'] choice of forum [may be] particularly appropriate where, as in this case, [] plaintiff[s] selected [their] home forum to bring suit.") (citing *Long Haymes Carr, Inc. v. VueCom, Inc.*, 1997 U.S. Dist. LEXIS 21939 at *11 (M.D.N.C. Dec. 12, 1997)); *see also Bates v. J.C. Penney Co.*, 624 F. Supp. 226, 227 (W.D.N.C. 1985) ("Plaintiffs' choice of forum should be given especially strong consideration since the forum they chose is in the district in which they reside.").

{38}  Obeid must satisfy a heavy burden to alter Plaintiffs' choice of forum by staying the case in favor of the New York Action. *See Firstar Bank, N.A. v. Interlease 757 Aircraft Investors, LLC*, 2002 U.S. Dist. LEXIS 20974 at *10 (M.D.N.C. Aug. 23, 2002) (citation omitted) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). However, when plaintiffs file a complaint merely as a strategic maneuver to choose a favorable forum, "first-filed" priority may be denied. *See Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F. Supp. 2d 357, 361 (W.D.N.C. 2003).

{39}  Obeid contends that La Mack and Massaro's initial Complaint was a "hip pocket" complaint, filed only to secure leverage in the "business divorce" negotiations

between the parties and to guarantee La Mack and Massaro a local forum in which to litigate this dispute should a business agreement not be reached. (Def.'s Br. Supp. Mot., pp. 6, 12.) A "hip pocket" complaint is one in which a plaintiff files suit in a favorable forum, but does not serve the complaint on defendant until after defendant files suit in a foreign forum and serves his complaint upon plaintiff. *Nutrition & Fitness, Inc.*, 264 F. Supp. 2d at 360. The plaintiff then pulls out his "hip pocket" complaint if a dispute results in litigation to contest defendant's motion to transfer or stay by claiming "first-filed" status. *Id.* at 360–62.

{40} Our Court of Appeals has addressed "hip pocket" complaints and stated that "[i]n situations in which two suits involving overlapping issues are pending in separate jurisdictions, priority should not necessarily be given to [the earlier filed suit.] Rather, if the plaintiff [] was on notice at the time of filing that the defendant was planning to file suit, a court should look beyond the filing dates to determine whether the [plaintiff's] suit is merely a strategic maneuver to achieve a preferable forum." *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 579, 541 S.E.2d 157, 164 (2000).

{41} Here, Obeid alleges that he put La Mack and Massaro on notice on June 25, 2014 that he may file suit against them. (Def.'s Br. Supp. Mot., p. 17.) The Court cannot ignore the fact that La Mack and Massaro thereafter filed their action on July 1, 2014, but did not attempt service until six weeks later – waiting until the day after they were served with Obeid's competing New York Action on August 15, 2014. (Def.'s

Br. Supp. Mot., p. 7, fn. 4.)[8]  Furthermore, instead of causing Gemini to bring a direct action against Obeid – which they could have done based on their combined 66.66% ownership in Gemini, but which would have required notifying Obeid of the planned litigation – La Mack and Massaro chose to file a derivative action on behalf of Gemini, without prior notice to Obeid, before then dropping all derivative claims in favor of a direct action in their later filed First Amended Complaint.  Because the Court finds that "[s]uch behavior screams of forum shopping," *see Nutrition & Fitness, Inc.*, 264 F. Supp. 2d at 362, the Court concludes that La Mack and Massaro's initial Complaint should not enjoy priority under the "first-filed" rule.  *See id.* at 361 ("It is well-settled law that a court has broad discretion in applying and construing the first-filed rule.") (citing *Plating Resources, Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903 (N.D. Ohio 1999)). Thus, the ninth factor weighs in favor of staying the North Carolina Action.[9]

{42}  With regard to the first (nature of the case), fifth (applicable law), sixth (burden of litigating matters not of local concern), and seventh (desirability of litigating matters of local concern in local courts) factors, the Court does not believe any of these factors weigh in favor of litigating this matter in North Carolina.  First,

---

[8] *See also* Def.'s Br. Supp. Mot., Ex. B, Affidavit of Attempted Service.

[9] N.C.R.C.P. 15(c) provides that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."  Even if the Court were to give the initial Complaint first filed status, only La Mack and Massaro's direct claims in their First Amended Complaint would be deemed to relate back to the earlier filed Complaint under Rule 15(c), first because Obeid had ample notice from the initial Complaint of the series of transactions or events that gave rise to the Individual Claims in the First Amended Complaint, and second because Gemini was not a named Plaintiff in the initial Complaint.  *Bailey v. Handee Hugo's, Inc.*, 173 N.C. App. 723, 726–27, 620 S.E.2d 312, 315 (2005) ("While Rule 15 of the North Carolina Rules of Civil Procedure permits the relation-back doctrine to extend periods for pursuing claims, it does not apply to parties.").

the majority of the parties' claims are governed by federal law or a state's law other than North Carolina's. In particular, Plaintiffs' claims in this action focus on the duties owed under Gemini's Operating Agreement, which will likely be governed under Delaware law pursuant to the Agreement's Delaware choice of law provision. (Am. Oper. Agrmt. § 11.7.) Furthermore, much of the offending conduct alleged in this action occurred outside of North Carolina, including in South Carolina, Tennessee, and Florida, and was directed against Gemini, a Delaware limited liability company with its principal place of business in New York. The Court therefore concludes that North Carolina law has little, if any, application to this dispute. Moreover, Obeid's New York Action not only asserts claims under the Amended Operating Agreement, which will likely be governed by Delaware law, but also New York common law claims as well as a federal trademark claim under the Lanham Act. In sum, the Court concludes that Plaintiffs' claims do not present substantial matters of local concern that would weigh in favor of their resolution in a North Carolina venue.

{43} The Court also concludes that the second (convenience of the witnesses), third (availability of compulsory process to produce witnesses), fourth (relative ease of sources of proof), and eighth (convenience and access to another forum) factors also weigh in favor of staying the North Carolina Action.

{44} The New York Action is currently pending in the United States District Court for the Southern District of New York. The parties have New York counsel, Plaintiffs' Motion to Dismiss the New York Action has been denied, and the parties

are engaged in discovery. All parties transact substantial business in New York, and the Court finds the Southern District of New York is a convenient forum where all parties are equipped to litigate.

{45} Moreover, most of Gemini's officers are based in New York, the majority of Obeid's "family and personal friends" that allegedly received inflated salaries are not North Carolina residents, the individuals that work for Gemini's principal lenders are primarily located in New York and Connecticut, and Gemini's current and potential investors by and large are located outside of North Carolina. (Def.'s Br. Supp. Mot., p. 19.) Further, Obeid does not regularly travel to or conduct business in North Carolina, whereas La Mack and Massaro regularly travel to New York. (Def.'s Br. Supp. Mot., p. 17.) Based on the above, the Court finds that the New York Court provides a more convenient forum for the witnesses in this case than North Carolina.

{46} The Court also finds that the availability of compulsory process is at least as effective in the Southern District of New York as it is in North Carolina in light of the federal court's ability to compel the appearance of witnesses under Rule 45 of the Federal Rules of Civil Procedure.

{47} Similarly, most of the Electronically Stored Information in this case is likely held on Gemini's servers in New York. The Court concludes that the relative ease of access to sources of proof is no more difficult in New York than it would be in North Carolina and, in light of the location of Gemini's data, very likely less difficult.

{48} The tenth factor requires this Court to consider any "practical considerations which would make the trial easy, expeditious, and inexpensive."

*Home Indem., Co. v. Hoechst Celanese Corp.*, 128 N.C. App. 113, 119, 493 S.E.2d 806, 810 (1997).  The Court finds it significant that Obeid's claims in the New York Action, while overlapping those in the North Carolina Action, are broader in scope, including a federal claim under the Lanham Act, and are brought against a more comprehensive set of defendants.  As Obeid notes in his papers, this Court has before it "only a subset of the issues pending in New York."[10]

{49}   The Court finds that the interests of justice and judicial economy are best served by litigation of this matter in the forum where all claims and all parties are joined and complete relief may be provided among the parties. *See Harbinger Capital Partners*, 2008 NCBC 6 ¶¶ 69–70 ("To grant a stay, it is not required that the parties and issues in both actions be identical. Substantial or functional identity is sufficient.") (citing *12 AT&T Corp. v. Prime Sec. Distribs., Inc.*, 1996 Del. Ch. LEXIS 134 at * 6 (Del. Ch. Oct. 24, 1996)).  *See generally*, *Coca-Cola Bottling Co.*, 141 N.C. App. at 578, 541 S.E.2d at 163 ("The declaratory remedy should not be invoked to try a controversy by piecemeal, or to try particular issues without settling the entire controversy.  This is especially so where a separate suit has been filed, or is likely to

---

[10] Obeid has included in the New York Action an additional 24 parties – Gemini Fund 5, LLC, 36 West 38th Street Holding, LLC, 33 Peck Slip Holding, LLC, Gemini Centerville Galleria, LLC, Gemini College Plaza H, LLC, Gemini Dubois Mall, LLC, Gemini Indian Creek, LLC, Gemini Opportunity Fund I, LLC, Gemini Opportunity Fund IV, LLC, Gemini Parkway Plaza, LLC, Gemini Real Estate Partners, LP, Gemini Real Estate Indian Creek Member, LLC, Gemini Rio Norte H, LP, Gemini River Ridge, LLC, Gemini Tamiami, LLC, Gemini Youngsville Crossing M, LLC, Gemini 300 West 22nd Street, LLC, Gemini Rowlett Partners, LLC, Gemini Rowlett Crossing, LP, Gemini 449 West 36th Street MT, LLC, Gemini 442 West 36th Street MT, LLC, Gemini 305 West 39th Street MT, LLC, Gemini 135 East Houston MT, LLC, and Gemini Equity Partners.

be filed, that will more fully encompass the scope of the entire controversy.") (internal citation and quotation marks omitted). Here that forum is New York.

{50} Furthermore, it appears to the Court that while certain discovery potentially could be used in both actions, permitting the North Carolina Action to proceed will likely result in additional time and expense for the parties, wasted judicial resources, and potentially separate trials that will require witnesses to testify twice. The Court thus concludes that "practical considerations" weigh in favor of staying the North Carolina Action in deference to the New York Action and finds Judge Diaz's conclusion in *Harbinger Capital Partners*, 2008 NCBC 6 ¶ 87, equally applicable here:

> . . . whatever I do in North Carolina, the New York Action will proceed. Accordingly, I find no good reason for expending precious judicial resources by insisting on the presentation of overlapping (if not identical) testimony and evidence in two jurisdictions.

{51} Accordingly, based on the Court's weighing and balancing of the various factors discussed above, the Court concludes that (1) a stay of the North Carolina Action is warranted by the factors present as discussed above, (2) the United States District Court for the Southern District of New York is a convenient, reasonable, and fair forum for the litigation of this matter, and (3) substantial injustice would result if the Court were to deny the stay and order the North Carolina Action to proceed.

### III.

### CONCLUSION

{52}  In light of the foregoing, the Court hereby (i) **DENIES** Obeid's Motion to Dismiss Plaintiffs' First Amended Complaint and (ii) **GRANTS** Obeid's alternative Motion to Stay this action while the New York Action proceeds.

{53}  Accordingly, this civil action is hereby **STAYED** pending the outcome of the New York Action.

**SO ORDERED**, this the 5th day of March, 2015.